[No. 56736-5-I.   Division One.   April 2, 2007.]

MICHAEL MILLER, *Appellant*, v. CHARLES CAMPBELL, *as Personal Representative, Respondent*.

*Jo-Hanna Read* (of *Law Office of Jo-Hanna Read*), for appellant.

*Patricia K. Buchanan* and *Nicholas L. Jenkins* (of *Lee Smart Cook Martin & Patterson, PS*), for respondent.

*Debra L.W. Stephens* and *Bryan P. Harnetiaux* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

¶1 BECKER, J. — Four years after going through bankruptcy, appellant Michael Miller sued the estate of his deceased stepfather to recover damages for sexual abuse inflicted upon him by the stepfather when Miller was young. The trial court applied the doctrine of judicial estoppel to dismiss the suit because Miller did not disclose the potential claim as an asset in bankruptcy. Judicial

estoppel is an equitable doctrine that bars a litigant from taking "clearly inconsistent" positions in court. *Cunningham v. Reliable Concrete Pumping, Inc.*, 126 Wn. App. 222, 224, 108 P.3d 147 (2005). When Miller filed for bankruptcy, he was unaware of the serious injuries for which he currently seeks compensation. Because Miller's present claim against his stepfather's estate is not clearly inconsistent with his failure to disclose in bankruptcy that he was a victim of childhood sexual abuse, he is not judicially estopped from pursuing it now.

¶2 Born in 1965, Miller claims that from the time he was 11 years old, he lived in constant fear of his stepfather, Patrick Campbell. He says he was physically beaten, yelled at, belittled, and sexually abused by Campbell on a regular basis. The sexual abuse involved Campbell touching Miller's genitals, rubbing his groin against him, exposing himself, and urinating in Miller's bathwater. In 1984, Miller's mother divorced Campbell. Miller moved out of the family home and did not see Campbell again. Miller did not tell anyone he had been sexually abused, but he always remembered being abused and knew that it had been harmful to him. He was "guilty and ashamed,"[1] had few friends, and often felt worthless.

¶3 Patrick Campbell died in November 2002. In the months leading up to his death, Miller's mother began to mention Campbell and talk about his health problems. Miller became increasingly upset at hearing Campbell's name. He had been plagued for years by nightmares about Campbell, but now they became more frequent. Miller says he started "remembering more and more incidents of abuse, and experiencing crippling, overwhelming feelings of worthlessness."[2] Miller went to Campbell's funeral in part because "I wanted to assure myself he really was dead."[3]

---

[1] Clerk's Papers at 333 (Decl. of Michael Miller) (Mar. 31, 2004).

[2] Clerk's Papers at 334 (Decl. of Michael Miller) (Mar. 31, 2004).

[3] Clerk's Papers at 527 (Dep. of Michael Miller) (Jan. 27, 2004).

¶4 In March 2003, Miller timely filed with Campbell's estate a creditor's claim for $500,000 for physical, mental, and emotional damages caused by Campbell's sexual abuse.[4] Right after filing the claim, Miller went into counseling for a couple of months with Dr. Adriance, a clinical psychologist. According to Dr. Adriance, Miller had long been aware that the childhood sexual abuse had caused him to have "anger, problems sleeping, and intrusive memories."[5] But Miller had never had counseling or treatment and did not know that other symptoms he had experienced, such as episodes of dissociation, were also connected to his history of sexual abuse.[6] Dr. Adriance diagnosed Miller as currently suffering from posttraumatic stress disorder and major depression as a result of childhood sexual abuse. She said counseling was therapeutic for Miller because it provided "a label for and context in which to understand his symptoms" and it "appeared to provide Mr. Miller with some relief."[7]

¶5 The estate denied Miller's claim. Miller filed a lawsuit. The estate, after taking Miller's deposition, moved to dismiss the suit based on the three year statute of limitations. According to the estate, Miller was seeking to recover for longstanding injuries, i.e., feelings of fear and unworthiness and difficulties with friendship and sexual relationships, which for all of his adult life he had known to be the effect of the abuse he experienced as a child.[8]

¶6 The three-year statute of limitations on a claim arising from an act of childhood sexual abuse does not begin to run at least until the victim discovers "that the act caused the injury for which the claim is brought." RCW 4.16.340(1)(c). Legislative findings supporting this statutory discovery rule state the legislature's intent "that the

---

[4] Clerk's Papers at 617-18 (Creditor's Claim) (Mar. 27, 2003).

[5] Clerk's Papers at 331 (Decl. of Dr. Adriance) (Mar. 23, 2004).

[6] Clerk's Papers at 331 (Decl. of Dr. Adriance) (Mar. 23, 2004).

[7] Clerk's Papers at 331 (Decl. of Dr. Adriance) (Mar. 23, 2004).

[8] Clerk's Papers at 489-500 (Campbell Estate's Summ. J. Mot.) (Mar. 8, 2004).

earlier discovery of less serious injuries should not affect the statute of limitations for injuries that are discovered later." LAWS OF 1991, ch. 212, § 1. The legislative findings disapprove of "the line of cases that state that discovery of any injury whatsoever caused by an act of childhood sexual abuse commences the statute of limitations." LAWS OF 1991, ch. 212, § 1. An example of this line of cases is *Raymond v. Ingram*, 47 Wn. App. 781, 737 P.2d 314 (1987), a case holding on facts similar to Miller's that the statute of limitations expired, but which relied on *Tyson v. Tyson*, 107 Wn.2d 72, 727 P.2d 226 (1986), the case the legislature expressly intended to reverse by enacting RCW 4.16.340.

¶7 Miller responded that until he began therapy in 2003, he was unaware of the serious injuries diagnosed by Dr. Adriance, i.e., dissociative disorders and major depression, and did not know Campbell's conduct had caused these injuries. Hence, it was not possible to say as a matter of law that Miller, more than three years previously, had discovered that "the injury for which the claim is brought" was caused by Campbell's conduct. RCW 4.16.340(1)(c). Applying the statutory discovery rule, the trial court denied the estate's motion for summary judgment. This result was consistent with cases decided under RCW 4.16.340. *See, e.g., Hollmann v. Corcoran*, 89 Wn. App. 323, 949 P.2d 386 (1997); *Korst v. McMahon*, 136 Wn. App. 202, 148 P.3d 1081 (2006).

¶8 In June 2005, the estate moved again for dismissal, this time based on Miller's "failure to identify the claims during bankruptcy proceedings."[9] The estate had discovered that in 1998, Miller retained counsel and filed a chapter 7 bankruptcy. He was 32 years old at the time. Bankruptcy schedule B required Miller to list his assets, including "contingent and unliquidated claims of every nature, including tax refunds, counter claims of the debtor, and the rights to setoff claims."[10] Under this category,

---

[9] Clerk's Papers at 324 (Campbell Estate's Mot. to Dismiss) (June 3, 2005).

[10] Clerk's Papers at 297 (Bankruptcy Schedule of Pers. Prop.) (Sept. 28, 1998).

Miller listed a small estimated tax refund and the possibility of a small lemon law claim against Ford.[11] He did not list any claim related to being a victim of sexual abuse in childhood. The bankruptcy court, finding that Miller had no assets, discharged all of his debt, totaling $34,220. The creditors received no payment.

¶9 Based on Miller's failure to disclose to the bankruptcy court the possibility of a claim against Patrick Campbell, the estate invoked the doctrine of judicial estoppel and moved to dismiss the present suit. The estate argued that the claim Miller was asserting in his present lawsuit was a potential claim in 1998, and he should have disclosed it to give the trustee the opportunity to decide whether there was a viable cause of action worth litigating at that time.

¶10 The trial court granted the motion to dismiss based on judicial estoppel:

> The major issue in this case . . . Did the plaintiff have knowledge of a claim and not list that claim?
>
> . . . The plaintiff, in this case, the Court determines, knew at the time that he filed for bankruptcy that he had been sexually abused, and he knew that he had been injured. He may not have known the full extent of those injuries. But he had an obligation to list the above as a potential asset, and it is not for us to look back and say would the trustee have done this, would the trustee have done that, when we wouldn't have to do that at all had the plaintiff listed what he knew: That he had been sexually abused and injured. Plaintiff was legally required to list this potential claim and he didn't.[12]

Miller appeals from the order of dismissal.

¶11 A lower court's application of the doctrine of judicial estoppel is reviewed for abuse of discretion. *Cunningham*, 126 Wn. App. at 227. "Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or

[11] Clerk's Papers at 297 (Bankruptcy Schedule of Pers. Prop.) (Sept. 28, 1998).

[12] Report of Proceedings at 25-26.

exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

¶12 "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position." *Cunningham*, 126 Wn. App. at 224-25. Its purposes are to preserve respect for judicial proceedings without the necessity of resorting to the perjury statutes; to bar as evidence statements by a party which would be contrary to sworn testimony the party has given in prior judicial proceedings; and to avoid inconsistency, duplicity, and the waste of time. *Cunningham*, 126 Wn. App. at 225. There are two primary limitations on the application of the doctrine. First, it may be applied "only where the position of the party to be estopped is clearly inconsistent with its previous one"; and second, "that party must have convinced the court to accept that previous position." *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999).

¶13 It is well established that judicial estoppel may apply to parties who accrue legal claims, file for bankruptcy, fail to list the claims among their assets, and then attempt to pursue the claims after the bankruptcy discharge. *Bartley-Williams v. Kendall*, 134 Wn. App. 95, 98-99, 138 P.3d 1103 (2006). " 'The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding.' " *Coastal Plains*, 179 F.3d at 208 (trial court erred by not judicially estopping debtors from later asserting a $10 million claim that they did not disclose in bankruptcy) (quoting *Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996)). "By not disclosing the asset, the debtor keeps an asset that may have created a dividend for the debtor's unsecured creditors." *Johnson v. Si-Cor, Inc.*, 107 Wn. App. 902, 909, 28 P.3d 832 (2001). Thus, when a chapter 7 debtor obtains a "no asset" discharge, as Miller

did here, it will often be seen as equitable to preclude the debtor from later pursuing an undisclosed prepetition personal injury claim. For example, in *Cunningham*, 11 days after having his debts discharged in bankruptcy, the former debtor commenced an action for a workplace injury he had known about but failed to disclose to the trustee in bankruptcy. The lower court appropriately dismissed the personal injury action based on judicial estoppel. The litigant's personal injury action was clearly inconsistent with his implicit representation in bankruptcy that he did not have such a claim, and he had convinced the bankruptcy court to accept that representation. *Cunningham*, 126 Wn. App. at 230-31.

¶14 Here, the trial court found Miller's situation to be comparable to the *Cunningham* debtor's. Miller obtained the benefit of a no-asset discharge by convincing the court to accept his representation that he had minimal assets.[13] The trial court found it was clearly inconsistent for him to be pursuing a $500,000 sexual abuse claim against Campbell five years later.

¶15 Miller admits that he always knew he had been injured by Campbell's abuse. But he contends that at the time he declared bankruptcy, he had no "claim" to disclose. He could not disclose the present claim because it is premised on new injuries: the major depression and posttraumatic stress disorder recently discovered through therapy with Dr. Adriance. And, he says, the statute of limitations had long ago run on any claim arising from the relationship difficulties and memories of abuse that had plagued him throughout his life.

¶16 Miller's argument that he had no duty to disclose a possible claim against Campbell is contrary to bankruptcy law. The Bankruptcy Code and court rules "impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*." *Coastal Plains*, 179 F.3d at 207-08.

---

[13] Report of Proceedings at 24.

Potential lawsuits must be disclosed to the bankruptcy trustee:

> "The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed."

*Coastal Plains*, 179 F.3d at 208 (alteration in original) (internal quotation marks omitted) (quoting *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F. Supp. 859, 867 (E.D. Tex. 1996)). Full disclosure gives the trustee the opportunity to pursue viable claims in order to repay creditors. "Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized." *Coastal Plains*, 179 F.3d at 208.

¶17 In order to obtain relief from his outstanding debts, Miller voluntarily chose to enter a forum where full disclosure of potential and contingent assets was required, even though the potential for success was doubtful or unknown. He knew that Campbell had harmed him. Even if he thought the claim was stale, and even though he felt so ashamed of his memories that he had never discussed them with anyone, his duty under bankruptcy law was to disclose.

¶18 Still, judicial estoppel, an equitable doctrine, is not to be applied inflexibly. *New Hampshire v. Maine*, 532 U.S. 742, 751, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). Its purpose is to " 'protect the integrity of the judicial process' " by " 'preventing parties from playing fast and loose with the courts to suit the exigencies of self interest'." *Coastal Plains*, 179 F.3d at 205 (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)). A party's nondisclosure of a claim in bankruptcy does not automatically lead to estoppel in a future suit. For example, courts have refused to apply judicial estoppel where the party who failed to disclose in bankruptcy either lacks knowledge of the undisclosed claims or has no motive for their concealment. *See*

*Coastal Plains*, 179 F.3d at 210; *see also Ryan Operations GP v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3d Cir. 1996) (potential employment discrimination claim allowed to go forward; debtor's failure to schedule it as an asset was not done in bad faith as it was highly speculative at the time and completely unrelated to matters in the bankruptcy). While we held in *Cunningham* that it is not essential for the court to make a finding of manipulative intent, deliberate or intentional manipulation can typically be inferred from the record in cases where judicial estoppel has been applied. *Cunningham*, 126 Wn. App. at 234. In such cases, it is not uncommon to see the court refer to the debtor's "bad faith,"[14] deliberate assertion of inconsistent positions "in order to gain advantage,"[15] or "reckless disregard for the truth."[16]

> [T]he doctrine of judicial estoppel is not an absolute bar to obtaining legal relief on the basis of new information, even if inconsistent old information had gotten the party an advantage in some other proceeding.
>
> . . . Judicial estoppel is strong medicine, and this has led courts and commentators to characterize the grounds for its invocation in terms redolent of intentional wrongdoing.

*Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1428 (7th Cir. 1993). The flavor of manipulation is not readily discernible in this record.

¶19 The brief of amicus Washington State Trial Lawyers Association Foundation recognizes that federal bankruptcy law is controlling on when a duty to disclose arises but contends that state law provides the touchstone for determining whether a party has asserted clearly inconsistent positions supporting judicial estoppel of a state tort action. We agree. "Additional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire*, 532 U.S. at 751. In this case, a substantial additional

---

[14] *Ryan Operations GP*, 81 F.3d at 362.

[15] *Ryan Operations GP*, 81 F.3d at 363.

[16] *In re Okan's Foods, Inc.*, 217 B.R. 739, 755 (Bankr. E.D. Pa. 1998).

consideration bearing on the equities is the unique nature of childhood sexual abuse. The special statute of limitations, RCW 4.16.340, indicates that it is not inconsistent for a victim to be aware for many years that he has been abused, yet not have knowledge of the potential tort claim against his abuser. "Indeed, as our Legislature has found, childhood sexual abuse, by its very nature, may render the victim *unable* to understand or make the connection between the childhood abuse and the full extent of the resulting emotional harm until many years later." *Cloud v. Summers*, 98 Wn. App. 724, 735, 991 P.2d 1169 (1999). The victim in effect is under a "disability" and will not be charged with knowledge of the tort claim for serious injuries until that "disability" is lifted. *Cloud*, 98 Wn. App. at 735.

¶20 For that reason, the statute of limitations is closely intertwined with the equities of applying judicial estoppel to a claim of childhood sex abuse. The legislature's primary concern in enacting the special statute of limitations "was to provide a broad avenue of redress for victims of childhood sexual abuse who too often were left without a remedy under previous statutes of limitation." *C.J.C. v. Corp. of the Catholic Bishop of Yakima*, 138 Wn.2d 699, 712, 985 P.2d 262 (1999). In view of the public policy embodied in the statute of limitations, Miller's assertion of a claim against Campbell in 2003 is not clearly inconsistent with his failure to mention a claim based on childhood sexual abuse in his schedule of assets in 1998. Unlike in *Cunningham* and other similar cases where former debtors have been precluded from bringing personal injury claims, Miller is not attempting to revive a known prepetition claim. He is pursuing a different claim, a claim for more serious injuries that he did not know about during his bankruptcy; a claim Miller says he did not begin to become aware of until the death of his stepfather triggered a new flood of memories and crippling symptoms. At trial, he must still face the estate's statute of limitations defense, and the estate will have the opportunity to argue to the fact finder that Miller's

774

positions have been inconsistent. Under these circumstances, we cannot say that allowing Miller to pursue the claim will affront the integrity of the judicial process.

¶21 In summary, we find no tenable grounds for concluding that Miller's present lawsuit is clearly inconsistent with his position in bankruptcy. At the same time, we reject Miller's argument that he was entitled to judgment as a matter of law. Miller moved unsuccessfully for partial summary judgment on the estate's liability and argues that his motion should have been granted because he presented uncontroverted evidence that Campbell sexually abused him. Campbell being dead, it is not surprising that the estate was unable to come up with controverting affidavits. The court was not obligated to take Miller's assertions as true; at trial, the estate may be able to raise doubts as to Miller's credibility. The trial court did not err in denying Miller's motion for partial summary judgment.

¶22 The order of dismissal is reversed.

COLEMAN and ELLINGTON, JJ., concur.