[No. 80276-9.   En Banc.]
Argued May 27, 2008.   Decided September 18, 2008.

MICHAEL MILLER, *Respondent*, v. CHARLES CAMPBELL, *as Personal Representative, Petitioner*.

530

*Rosemary J. Moore* (of *Lee Smart, PS, Inc.*), for petitioner.

*Jo-Hanna Gladness Read* (of *Law Office of Jo-Hanna Read*), for respondent.

*Bryan P. Harnetiaux, Sarah C. Schreck, and Kelby D. Fletcher* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

¶1 Owens, J. — We originally granted review of this case to determine whether judicial estoppel should apply to prevent a plaintiff from pursuing a claim of childhood sexual abuse after he failed to disclose the claim as an asset in prior chapter 7 bankruptcy proceedings. However, after accepting review, we granted respondent Michael Miller's motion to substitute the bankruptcy trustee as the real party in interest in this case. The substitution fundamentally changed the posture of this case on review because judicial estoppel does not bar a bankruptcy trustee from pursuing a debtor's claim that was not disclosed during bankruptcy. This court now must determine whether judicial estoppel may still apply to prevent Miller, the bankruptcy debtor, from recovering any part of an award that the bankruptcy trustee might obtain from his claim.

¶2 We hold that the doctrine of judicial estoppel no longer applies in this case because the substitution of the trustee leaves Miller with no position to assert in state court. His only ability to recover will arise if and when the

trustee obtains a judgment and brings the award to bankruptcy court for distribution. At that point, Miller can seek recovery in bankruptcy court. The bankruptcy court will stand in the best position to consider Miller's interest.

## FACTS

¶3 Miller alleges that he was sexually abused by his stepfather, Patrick Campbell, from the time Miller was 11 years old until he was 18, between 1975 and 1984. Miller alleges that Campbell continually abused him during this period while Campbell lived with Miller and his mother.

¶4 Miller filed for chapter 7 bankruptcy in 1998. Those proceedings required him to disclose all of his personal property for administration in bankruptcy court. One schedule instructed him to list all "contingent and unliquidated claims of every nature, including tax refunds, counter claims of the debtor, and the rights to setoff claims." Clerk's Papers at 297. Under this category, Miller listed two assets: a small estimated tax refund and a possible "lemon law" claim against a car company. *Id.* He did not list a claim of sexual abuse against Campbell as an asset. The bankruptcy court found that Miller had no assets and discharged his entire debt, totaling $34,220.

¶5 Miller claims that he never told anyone about his sexual abuse until the time around Campbell's death in 2002, when his mother began talking to him about Campbell's health problems. He became upset at the mention of Campbell's name and eventually confided in his mother that Campbell had done more than physically beat him. Miller also contacted his half brother, Erik Campbell, during that period to talk about his abuse. Erik told Miller that Campbell had abused him also, and the two discussed the possibility of suing Campbell.

¶6 In March 2003, Miller filed a creditor's claim with Campbell's estate (the Estate) for $500,000, alleging physical, mental, and emotional damages caused by Campbell's abuse. The Estate rejected Miller's claim. Miller then filed

a complaint in Snohomish County Superior Court against the Estate for various intentional torts arising from Campbell's alleged sexual abuse.

¶7 The Estate filed for summary judgment, claiming that the statute of limitations had run on Miller's claim against Campbell. Miller presented evidence that he was unaware of the connection between the abuse and his injuries, including posttraumatic stress syndrome, until after Campbell's death. *See* RCW 4.16.340 (statute of limitations for claims of childhood sexual abuse). The court denied the Estate's motion.[1] The Estate then moved for dismissal, claiming that Miller was estopped from pursuing his claim because he had failed to list the claim as an asset in his 1998 bankruptcy action. The trial court granted this motion and dismissed the action on grounds of judicial estoppel. Specifically, the court found that Miller knew he had been injured by the abuse at the time that he filed for bankruptcy, even though he may not have known the extent of those injuries. Verbatim Report of Proceedings at 25-26. Miller moved for reconsideration, claiming that while he knew he had been abused at the time he filed for bankruptcy, he did not understand the connection between the abuse and his injuries until he sought counseling. The court denied the motion for reconsideration.

¶8 Miller appealed the order of dismissal, and the Court of Appeals reversed the trial court's decision. The court affirmed that Miller had a duty to disclose his potential claim against Campbell in the bankruptcy proceedings. *Miller v. Campbell*, 137 Wn. App. 762, 771, 155 P.3d 154 (2007). However, the court went on to hold that his claim should not be barred by judicial estoppel because the unique nature of childhood sexual abuse " 'may render the

---

[1] The Estate also filed a second motion for summary judgment based on the "dead man" statute. *See* RCW 5.60.030. The court denied that motion as well, finding that the Estate waived protection under the statute by failing to object to the admission of Miller's deposition regarding the abuse. Miller filed his own motion for partial summary judgment as to liability. The court denied the motion because Campbell's death prevented the Estate from procuring an affidavit to defend its position.

victim *unable* to understand or make the connection between the childhood abuse and the full extent of the resulting emotional harm until many years later.' " *Id.* at 772-73 (quoting *Cloud v. Summers*, 98 Wn. App. 724, 735, 991 P.2d 1169 (1999)). The court noted that a victim of abuse is effectively under a " 'disability' " and that courts should not charge the victim with knowledge of the tort claim until the disability is lifted. *Id.* (quoting *Cloud*, 98 Wn. App. at 735).

¶9 Two days after the Court of Appeals issued its decision, the bankruptcy trustee moved to reopen Miller's bankruptcy case. The bankruptcy court granted the motion and appointed the trustee to administer Miller's claim as an asset of the bankruptcy estate. *See* Decl. of Virginia Burdette.

¶10 The Estate appealed to this court in June 2007. We granted review on March 4, 2008. *Miller v. Campbell*, 163 Wn.2d 1006, 180 P.3d 784 (2008). On March 21, 2008, Miller filed a motion to substitute the bankruptcy trustee as the real party in interest in the case. Mot. for Substitution of Real Party in Interest and Req. for Emergency Hr'g. The Estate objected, arguing that the motion was untimely and should not relate back to the time of the original filing. Answer of Pet'r to Mot. for Substitution of Real Party in Interest. In reply, Miller explained that the trustee moved to reopen his bankruptcy case after the Court of Appeals decided that his claim was subject to disclosure at bankruptcy. Reply of Resp't to Appellant's Answer Re: Substitution of Real Party in Interest. Miller asserted that the reopening of his bankruptcy case determined that the bankruptcy estate owns his claim and that he has no individual interest in his claim in state court. *Id.* at 4-5, 10. This court granted the motion to substitute en banc on May 1, 2008. The parties have submitted supplemental briefing as to what effect substitution has on this case.

## ANALYSIS

### I

■■ ¶11  We review a trial court's application of judicial estoppel under an abuse of discretion standard. *Cunningham v. Reliable Concrete Pumping, Inc.*, 126 Wn. App. 222, 227-28, 108 P.3d 147 (2005) (citing *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001)). "Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

### II

■ ¶12  We granted Miller's motion to substitute the bankruptcy trustee as the real party in interest in recognition of the bankruptcy court's order reopening Miller's bankruptcy to allow the trustee to pursue Miller's claim. *See Bartley-Williams v. Kendall*, 134 Wn. App. 95, 101, 138 P.3d 1103 (2006) ("When a debtor fails to list a legal claim in bankruptcy proceedings and the case is subsequently reopened, 'there is no debate' that the bankruptcy trustee is the real party in interest, not the debtor." (quoting *Sprague v. Sysco Corp.*, 97 Wn. App. 169, 172, 982 P.2d 1202 (1999))). As an initial matter, we must determine whether the substitution should relate back to the time of original filing in this case. While the trial court has not had the opportunity to decide this issue, the parties addressed it in their briefing on Miller's motion to substitute the trustee. In particular, the Estate argued that RAP 3.2 does not include a provision specifically permitting a claim to relate back to the time of filing. Answer of Pet'r to Mot. for Substitution of Real Party in Interest at 16. On the other hand, that rule

does not expressly prevent a party's transferred interest from relating back to the time of filing.

¶13 According to CR 17(a), every action must be prosecuted by the real party in interest. However, the rule goes on to state that

> [n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

CR 17(a). Furthermore, CR 15(c) generally allows amended pleadings to relate back to the date of original filing if the amendment relates to conduct, transaction, or occurrence in the original pleading. We have recently summarized that "the test for relation back under CR 17(a) and CR 15(c) is . . . whether the defendant had notice of the lawsuit and accordingly was not prejudiced, and whether the real party plaintiff in interest ratified the lawsuit or sought to be substituted as plaintiff within a reasonable time after objection by the adversary." *Kommavongsa v. Haskell*, 149 Wn.2d 288, 317, 67 P.3d 1068 (2003).

¶14 This court has held that a plaintiff may amend a complaint to name the real party in interest even after the statute of limitations has run on a claim "where the only change is a change in the representative capacity in which suit is brought, and there is no prejudice to the defendant." *Beal v. City of Seattle*, 134 Wn.2d 769, 773, 954 P.2d 237 (1998). In *Beal*, we clarified that the rules do not require a showing of mistake or excusable neglect in order for a change in the representative capacity of the plaintiff to relate back to the time of filing. *Id.* at 782-83. Courts have reached the same conclusion regarding the substitution of a bankruptcy trustee as the real party in interest of a debtor's claim that was not disclosed in bankruptcy. *See Sprague*, 97 Wn. App. at 179-80 (allowing the substitution of the bank-

ruptcy trustee and noting, "the amendment changes nothing except who will benefit from the action"); *Rousseau v. Diemer*, 24 F. Supp. 2d 137, 143-44 (D. Mass. 1998); *Hammes v. Brumley*, 659 N.E.2d 1021, 1030 (Ind. 1995); *Crumpacker v. DeNaples*, 1998-NMCA-169, 126 N.M. 288, 296, 968 P.2d 799.

¶15 Following our precedent and the decisions of other courts regarding the substitution of a bankruptcy trustee, we hold that the substitution in this case should relate back to the time of the original filing. The Estate will not be prejudiced by relation back because the substitution changes only the representative capacity of the parties, not the nature of the claims against which the Estate must defend. *See Sprague*, 97 Wn. App. at 180; *Rousseau*, 24 F. Supp. 2d at 144; *Hammes*, 659 N.E.2d at 1030; *Crumpacker*, 126 N.M. at 296.

¶16 Furthermore, the motion for substitution was not untimely for purposes of relation back. In its opposition to Miller's motion to substitute, the Estate argued that Miller did not substitute the real party in interest within a reasonable time because he waited until after trial to move for substitution.[2] Answer of Pet'r to Mot. for Substitution of Real Party in Interest at 17-19. However, the reasonable time permitted for the substitution of the real party in interest relates to the period *after* an objection has been made for not prosecuting in the name of the real party. CR 17(a). Here, the Estate did not object to the absence of the trustee as the real party in interest at trial.[3] Instead, the Estate pursued a motion to dismiss for lack of standing on a theory of judicial estoppel, focusing on Miller's own personal claim. Therefore, the motion for substitution was

---

[2] Miller maintains that he did not move to substitute the bankruptcy trustee at trial because the nature of his injuries did not manifest until after the bankruptcy case was dismissed. He moved to substitute only after the Court of Appeals expressly rejected this theory and held that he had a duty to disclose his claim in bankruptcy court. *Miller*, 137 Wn. App. at 771.

[3] While the Estate pointed out that the bankruptcy trustee had not been "given the opportunity to participate in these proceedings in any way," Br. of Resp't to Amicus at 2, it could have objected to the trustee's absence at trial.

not untimely raised after trial because the Estate failed to object to the absence of the bankruptcy trustee at trial.

¶17 For these reasons, we order that the substitution of the bankruptcy trustee relates back to the time of the original filing.

## III

¶18 Next, we must consider what effect our decision to allow substitution of the bankruptcy trustee has on the trial court's order to dismiss on grounds of judicial estoppel. The Court of Appeals decision addressed the application of judicial estoppel only as to Miller because the issue of substitution did not arise until after that court entered its decision. Therefore, before we review the Court of Appeals decision, we must determine whether judicial estoppel continues to have any application in this case in light of the substitution of the bankruptcy trustee as the real party in interest.

¶19 The doctrine of " '[j]udicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.' " *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007) (quoting *Bartley-Williams*, 134 Wn. App. at 98). The determination of whether to apply judicial estoppel focuses on three core factors:

> (1) whether "a party's later position" is " 'clearly inconsistent' with its earlier position"; (2) whether "judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled' "; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Id.* at 538-39 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599

(6th Cir. 1982))).[4] The purpose of the doctrine is " 'to preserve respect for judicial proceedings' " and " 'to avoid inconsistency, duplicity, and . . . waste of time.' " *Id.* at 538 (alteration in original) (internal quotation marks omitted) (quoting *Cunningham*, 126 Wn. App. at 225).

¶20 We have recognized that judicial estoppel can be used to prevent a party from pursuing a claim that he or she had an obligation to disclose in bankruptcy and failed to do so. *Id.* at 539 ("Courts may generally apply judicial estoppel to *debtors* who fail to list a potential legal claim among their assets during bankruptcy proceedings and then later 'pursue the claims after the bankruptcy discharge.' " (quoting *Bartley-Williams*, 134 Wn. App. at 98)); *see In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988). At the commencement of bankruptcy, the debtor must disclose all of his assets to be included in the bankruptcy estate for the potential benefit of creditors. 11 U.S.C. § 521(a)(1); *see also Cusano v. Klein*, 264 F.3d 936, 945-46 (9th Cir. 2001). The bankruptcy estate includes all the debtor's potential claims or causes of action that existed at the time he or she filed for bankruptcy. 11 U.S.C. § 541(a)(1); *see also In re Swift*, 129 F.3d 792, 795 (5th Cir. 1997); *Coastal Plains*, 179 F.3d at 207-08. The failure to disclose a potential claim in bankruptcy is considered inconsistent with a later attempt to pursue such a claim outside the bankruptcy proceedings. *See Arkison*, 160 Wn.2d at 539.

¶21 While judicial estoppel may prevent a debtor from recovering for a previously undisclosed claim, we recently declined to apply the doctrine to prevent the bankruptcy trustee from pursuing a debtor's claim for the benefit of the bankruptcy estate. *Id.* at 541. A debtor's potential claim remains the property of the bankruptcy estate even if the debtor fails to disclose the claim during

---

[4] In *Arkison*, we did not apply the elements relating to privity, originally established in *Markley v. Markley*, 31 Wn.2d 605, 614-15, 198 P.2d 486 (1948). *See Johnson v. Si-Cor, Inc.*, 107 Wn. App. 902, 907-08, 28 P.3d 832 (2001).

bankruptcy. 11 U.S.C. § 554(d); *see also Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004) ("By operation of statute, assets that [debtor] failed to schedule remained the bankruptcy estate's property, even after the court discharged his debt."); *In re Lopez*, 283 B.R. 22, 28 (B.A.P. 9th Cir. 2002). A bankruptcy trustee may seek to reopen a case for the purpose of pursuing an undisclosed claim on behalf of the estate. 11 U.S.C. § 350(b); *Lopez*, 283 B.R. at 26-27. In *Arkison*, we held that "a trial court may not generally apply the doctrine of judicial estoppel to bar a bankruptcy trustee standing as the real party from pursuing a debtor's legal claim not listed as an asset during bankruptcy proceedings." 160 Wn.2d at 541.

¶22 The bankruptcy trustee pursues the claim for the benefit of the bankruptcy estate, not the debtor, and therefore the trustee's position is not inconsistent with the debtor's own failure to disclose the claim in bankruptcy. *Id.* Indeed, preventing the bankruptcy trustee from pursuing a debtor's claim would harm the debtor's creditors and others who have an interest in the claim as part of the bankruptcy estate. *See Bartley-Williams*, 134 Wn. App. at 102 ("To prohibit the trustee from pursuing the claim on behalf of the estate may create a windfall for the party seeking to invoke judicial estoppel at the expense of the bankruptcy creditors.").

¶23 In this case, we granted Miller permission to substitute the trustee as the real party in interest because the bankruptcy court reopened Miller's bankruptcy action in order for the bankruptcy trustee to pursue his claim for the benefit of the bankruptcy estate. *See id.* at 101; *Dunmore*, 358 F.3d at 1112. Following *Arkison*, judicial estoppel cannot prevent the bankruptcy trustee from bringing Miller's claim to trial.

¶24 The Estate concedes that judicial estoppel cannot prevent the bankruptcy trustee from pursuing Miller's claim. Nevertheless, the Estate urges us to reverse the Court of Appeals because judicial estoppel can still bar Miller from ever seeking to recover from a judgment in this

case. The Estate relies on *Bartley-Williams*, in which the Court of Appeals decided that judicial estoppel was inapplicable to prevent a bankruptcy trustee who had been substituted to pursue a debtor's claim on behalf of the bankruptcy estate but affirmed the trial court's application of the doctrine to bar the debtor from receiving any benefit from the suit in the event of a recovery. 134 Wn. App. at 102. In *Arkison*, we followed the *Bartley-Williams* court's decision regarding the application of the doctrine as to the bankruptcy trustee, but we declined to decide whether judicial estoppel should apply to a debtor for whom the trustee has been substituted as the real party in interest. *Arkison*, 160 Wn.2d at 541 n.2. Instead, we deferred to the trial court and bankruptcy court to determine the debtor's ability to recover. *Id.*

¶25 We now hold that the doctrine of judicial estoppel generally has no application against a debtor when the bankruptcy trustee has been substituted as the real party in interest. As the bankruptcy trustee is the real party in interest, the claim belongs to the trustee who has the right to pursue the debtor's entire claim. *See, e.g.*, *Hammes*, 659 N.E.2d at 1030 ("A real party in interest . . . is the person who is the true owner of the right sought to be enforced. He or she is the person who is entitled to the fruits of the action." (citation omitted)). The debtor has no interest left to pursue once the bankruptcy trustee has been substituted. Therefore, judicial estoppel cannot prevent the debtor from taking an inconsistent position because he or she has no position to pursue in state court.

¶26 This issue was examined in *Cloud v. Northrop Grumman Corp.*, 67 Cal. App. 4th 995, 1020-21, 79 Cal. Rptr. 2d 544 (1998), in which the court declined to apply judicial estoppel after allowing the bankruptcy trustee to substitute as the real party in interest in an action originally brought by the debtor. After deciding that substitution of the bankruptcy trustee related back to the time of the original filing, the court reasoned that "there is generally little need" to apply judicial estoppel in a case where a

debtor has failed to disclose a potential claim because the claim belonged to the bankruptcy estate and therefore the debtor had no standing to sue. *Id.;*[5] *see Hammes,* 659 N.E.2d at 1030 ("In general, the plaintiff-debtor does not have anything to gain from failing to commence a suit in the name of the trustee, because a debtor who fails to do so is precluded from pursuing that claim in his or her own name."). Under such circumstances, the court found it "difficult to conceive" of "a circumstance in which . . . a party without standing needs to be judicially estopped." *Cloud,* 67 Cal. App. 4th at 1020-21. Similarly, judicial estoppel is not applicable in the present case where Miller's claim belongs to the bankruptcy trustee who can pursue the claim for the benefit of the bankruptcy estate.

¶27 If the bankruptcy trustee obtains a judgment against the Estate, that award will become part of the bankruptcy estate and will be distributed in bankruptcy court in accordance with federal bankruptcy law. The bankruptcy court will be in the best position to determine Miller's right to recover damages in light of his initial failure to disclose the claim in bankruptcy court. *See id.* at 1021 ("Once an appropriate application is made to the bankruptcy court, the *bankruptcy court* can take appropriate action to promote bankruptcy goals and protect the bankruptcy court's process."). That court may choose to apply the doctrine of judicial estoppel to protect the integrity of its own proceedings.[6] In any event, we decline to attempt to interfere with the bankruptcy court's power and

---

[5] While the *Cloud* court referred to the status of the real party in interest as an issue of standing, courts have distinguished between these terms. *See Dunmore,* 358 F.3d at 1112; *Sprague,* 97 Wn. App. at 176 n.2 ("Standing requires that the plaintiff demonstrate an injury to a legally protected right. The real party in interest is the person who possesses the right sought to be enforced." (citation omitted)).

[6] Federal courts have applied the doctrine of judicial estoppel in bankruptcy cases. *See Coastal Plains,* 179 F.3d at 208; *Oneida Motor Freight,* 848 F.2d at 419.

discretion in determining how to distribute the bankruptcy estate.[7]

██ ¶28 Our refusal to apply judicial estoppel in this case will not impose an unfair detriment on the Estate. As the substitution allows the bankruptcy trustee to pursue Miller's claim as if pursued by Miller himself, the Estate already is exposed to full liability for the alleged sexual abuse claim. *See id.* ("Once the trustee has either abandoned the claim or substituted in, no possibility of unfair advantage is apparent."). In essence, the Estate asks us to use judicial estoppel to limit its liability to the extent that Miller would receive any benefit from a judgment. However, the doctrine of judicial estoppel protects the integrity of the judicial process, not the interest of a defendant attempting to avoid liability. *Ryan Operations GP v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir. 1996) ("[Judicial estoppel] is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims [and] is not a sword to be wielded by adversaries unless such tactics are necessary to 'secure substantial equity.' " (quoting *Gleason v. United States*, 458 F.2d 171, 175 (3d Cir. 1972))).

¶29 The substitution of the bankruptcy trustee eliminates Miller's interest in this case and allows the trustee to pursue Miller's claim in the trial court. The substitution of the bankruptcy trustee leaves us no opportunity to review the Court of Appeals decision in this case. Therefore, we

---

[7] The Estate cites to *Lopez* in support of its argument that the trial court is the appropriate forum to apply judicial estoppel against the debtor. However, the issue in *Lopez* concerned only whether judicial estoppel should prevent the bankruptcy court from reopening a bankruptcy case in order for the trustee to pursue the debtor's previously undisclosed claim. While the bankruptcy court declined to use judicial estoppel to prevent the trustee from reopening the case, it speculated that the trial court could determine whether judicial estoppel should limit the recovery of the claim beyond what was necessary to pay the bankruptcy creditors. *Lopez*, 283 B.R. at 30. The court "express[ed] no opinion" whether judicial estoppel should apply to such a claim. *Id.* Therefore, *Lopez* did not reach the issue of whether judicial estoppel could prevent a debtor from recovering an award obtained by the bankruptcy trustee. More importantly, the court did not reject its own power to equitably distribute an award obtained by the trustee as part of the bankruptcy estate.

545

vacate the trial court's order of dismissal and remand for
further proceedings.

ALEXANDER, C.J.; C. JOHNSON, MADSEN, SANDERS, CHAMBERS,
FAIRHURST, and J.M. JOHNSON, JJ.; and PENOYAR, J. PRO TEM.,
concur.