220 P.3d 229 (2009)
CHD, INC., Appellant,
v.
Melvin C. TAGGART, d/b/a Taggart Engineering & Surveying, Respondent.
No. 27192-7-III.
Court of Appeals of Washington, Division 3.
November 12, 2009.
*231 Timothy W. Durkop, Attorney at Law, Spokane Valley, WA, for Appellant.
Mark S. Moorer, Attorney at Law, Moscow, ID, for Respondent.
SCHULTHEIS, C.J.
¶ 1 CHD, Inc. owed Taggart Engineering & Surveying money for surveying work, which was evidenced by a promissory note and secured by a deed of trust. CHD acknowledged the debt in Chapter 11 bankruptcy proceedings that were dismissed without confirmation or implementation of a reorganization plan. CHD later refinanced the encumbered property, requiring that Taggart be paid. The closing agent asked the noteholder for a payoff statement, which it provided, and CHD paid the amount identified in the payoff statement, around $29,000. CHD received a faxed copy of the promissory note marked "paid in full." Taggart disputed the amount paid and returned the money.
¶ 2 CHD filed suit to quiet title on the property encumbered by the debt to determine the rights of the parties under the note. The trial court decided the matter in favor of CHD. On reconsideration, Taggart successfully argued to the superior court that, because CHD had represented in its bankruptcy proceeding that CHD owed Taggart $41,000 instead of the $29,000 CHD provided in the payoff, CHD was judicially estopped from claiming that the debt CHD owed to Taggart was different than the $41,000 stated in the bankruptcy paperwork. On appeal, CHD contends that the trial court improperly applied judicial estoppel. We agree and reverse and remand for further proceedings.
¶ 3 Taggart Engineering & Surveying performed surveying work for CHD, Inc. On October 1, 1997, CHD executed a $16,000 promissory note payable to Taggart on October 1, 1999, or upon sale of the property. CHD also executed a deed of trust to secure the promissory note, naming Taggart as the beneficiary, which stated:
This deed is for the purpose of securing performance of each agreement of Grantor herein contained, and payment of the sum of Seventeen Thousand and 00/100ths Dollars ($17,000.00)[1] with interest, in accordance with the terms of a promissory note of even date herewith, payable to Beneficiary or order, and made by Grantor, and all renewals, modifications and extensions thereof, and also such further sums as may be advanced or loaned by Beneficiary to Grantor, or any of their successors or assigns, together with interest thereon at such rate as shall be agreed upon.
Clerk's Papers (CP) at 6.
¶ 4 The terms of the note required that the note and deed of trust "shall be placed in escrow at the Law Office of Waldo and Schweda, P.S.," now Waldo, Schweda & Montgomery, P.S. CP at 8.
¶ 5 In May 2002, CHD filed the first of two Chapter 11 bankruptcy proceedings. Taggart acknowledges that CHD disputed the amount secured by the deed of trust. Taggart objected to CHD's reorganization plan, claiming the plan did not provide information as to when creditors would be paid, the plan was underfunded, and "the plan is not proposed in good faith." CP at 207. In at least two disclosure statements filed in the first bankruptcy, CHD acknowledges a deed of trust in Taggart's favor in the amount of $17,000. The bankruptcy was dismissed in April 2003 without a reorganization plan being confirmed or implemented.
¶ 6 CHD filed a second Chapter 11 bankruptcy in September 2003. Taggart filed a *232 claim in January 2004 for $40,987.76. CHD filed a disclosure statement identifying the real property at issue, which it stated was subject to a deed of trust "in favor of Taggart Engineering and Surveying in the amount of $41,000.00." CP at 170. The reorganization plan notes that the claim is partially disputed. Taggart filed an objection, asserting that it requested information from CHD regarding the nature of the disputed amount and CHD did not respond. CHD filed a first amended disclosure statement, making the same relevant representations as in the first as well as making a general statement that "[t]he debtor has resolved all litigation issues at this time." CP at 192. A second amended reorganization plan was then filed that acknowledges Taggart's claim for $41,000 and that Taggart is a secured creditor. The second bankruptcy petition was dismissed in November 2004. No reorganization plan was confirmed or implemented.
¶ 7 In July 2006, CHD refinanced the property subject to the deed of trust. As part of the transaction, the closing agent ordered title insurance, which indicated that the property was subject to a deed of trust in favor of Taggart in the amount of $17,000. On July 26, the closing agent contacted the law firm of Waldo, Schweda & Montgomery, P.S., to obtain an exact payoff figure, including interest. The law firm sent a statement to which the closing agent responded on August 9 with a trust account check for $28,847.79, the amount identified in the payoff statement. The check was cashed. The law firm provided the closing agent with a copy of the note marked "paid in full." CP at 53.
¶ 8 On September 12, the law firm informed the closing agent that it was "`invalidating the payoff statement dated July 26, 2006.'" CP at 56. The law firm provided a check from its trust account for $28,847.79, payable to the closing agent's trust account. Mr. Taggart had evidently refused payment because he believed he was owed additional monies that were secured by the deed of trust.
¶ 9 CHD initiated this quiet title action to determine the rights of the parties under the note. CHD also asserted two legal theories: that the statute of limitations had run on the collection of the debt and/or the acceptance of the payoff by the law firm constituted accord and satisfaction. Cross-motions for summary judgment were filed. Besides the two legal theories, CHD also claimed that the obligations were personally incurred by members of the corporation and the work was performed on property not owned by the corporation. Finally, CHD asserted that it did not agree that any other obligations would be secured by the deed of trust and that the statute of frauds precluded the security of unwritten agreements. Taggart sought to eliminate consideration of the two legal theories at trial. The trial court orally granted a motion for summary judgment in favor of CHD.
¶ 10 Before the entry of the order of judgment, Taggart moved for reconsideration, asserting that the law firm was not its agent, the note did not create an escrow, and CHD should be judicially estopped from disputing any disclosures or representations it made in the bankruptcy. The trial court granted the motion for reconsideration, ruling that CHD was "judicially estopped from claiming any amount different than it claimed in its Bankruptcy statement absent of [sic] proof of payments." CP at 241. The court then entered an order dismissing CHD's claim for relief and for judgment in favor of Taggart in the amount of $41,000 plus interest and attorney fees. This appeal follows.
¶ 11 "While orders [on] reconsideration are reviewed for abuse of discretion, summary judgment orders are reviewed de novo." Bunnell v. Blair, 132 Wash.App. 149, 152, 130 P.3d 423 (2006) (citing Jones v. Allstate Ins. Co., 146 Wash.2d 291, 300, 45 P.3d 1068 (2002)). We review an order granting summary judgment de novo, engaging in the same inquiry as the trial court and considering all facts and reasonable inferences in the light most favorable to the nonmoving party. Korslund v. DynCorp Tri-Cities Servs., Inc., 156 Wash.2d 168, 177, 125 P.3d 119 (2005). Summary judgment is proper if the record before the court shows that there are no genuine issues of material fact and the moving party is entitled to judgment *233 as a matter of law. CR 56(c); Hisle v. Todd Pac. Shipyards Corp., 151 Wash.2d 853, 861, 93 P.3d 108 (2004).
¶ 12 "`[J]udicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" Miller v. Campbell, 164 Wash.2d 529, 539, 192 P.3d 352 (2008) (internal quotation marks omitted) (quoting Arkison v. Ethan Allen, Inc., 160 Wash.2d 535, 538, 160 P.3d 13 (2007)). A trial court's application of judicial estoppel is discretionary. Id. at 536, 192 P.3d 352; New Hampshire v. Maine, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (exercising original jurisdiction). "Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
¶ 13 The court focuses on three core factors when deciding whether to apply judicial estoppel:
"(1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."
Miller, 164 Wash.2d at 539, 192 P.3d 352 (internal quotation marks omitted) (quoting Arkison, 160 Wash.2d at 538-39, 160 P.3d 13).
¶ 14 The purpose of the doctrine is to preserve respect for judicial proceedings and to avoid inconsistency, duplicity, and waste of time. Id. at 540, 192 P.3d 352.
¶ 15 As to the first core factor, CHD argues that it did not take a position in the superior court that is clearly inconsistent with its position in bankruptcy court. CHD is correct.
¶ 16 In the bankruptcy court, CHD acknowledged a debt and inconsistently stated the amount, whether the amount was in dispute, and what amount was secured by the deed of trust. In the last reorganization plan filed by CHD, which is a part of the record on appeal by Taggart's motion to supplement the record, CHD only generally acknowledges that Taggart had a claim for $41,000 and that Taggart is a secured creditor.
¶ 17 Two years after that acknowledgement, new facts came into play that were the foundations for CHD's legal defense that CHD pursued in the superior court. One new fact was the passage of time itself, which was the basis of the statute of limitations defense. Other facts involved the payoff, which was the basis of the accord and satisfaction defense.
¶ 18 Judicial estoppel "`prevents a party from taking a factual position that is inconsistent with his or her factual position in previous litigation.'" Miles v. Child Protective Servs. Dep't, 102 Wash.App. 142, 153 n. 21, 6 P.3d 112 (2000) (emphasis added) (quoting Holst v. Fireside Realty, Inc., 89 Wash.App. 245, 259, 948 P.2d 858 (1997)). The doctrine concerns itself with inconsistent assertions of fact, not with inconsistent positions taken on points of law. See Ashmore v. Estate of Duff, 165 Wash.2d 948, 951-52, 205 P.3d 111 (2009).
¶ 19 The facts in this case are similar to those in Ashmore, 165 Wash.2d at 950-51, 205 P.3d 111. There, the personal representative of a woman's estate sought to enjoin the conveyance of the house in which the woman and her deceased husband lived for 30 years. The personal representative of the husband's estate had entered into a purchase and sale agreement with a buyer. But the wife's personal representative asserted that the wife had a community interest in the property. The court enjoined the sale until the interest of each respective estate could be determined at trial. The personal representative of the husband's estate filed a declaratory action. The parties resolved the issue, and the husband's estate conveyed the property to the wife's estate. The purchaser *234 sought specific performance of the purchase and sale agreement. The wife's personal representative argued that the agreement had expired by its terms. The trial court ruled that the wife's estate was judicially estopped from making that argument and ordered specific performance. The Washington Supreme Court held that the wife's estate did not take inconsistent positions because at the time that the injunction was sought, the agreement had not yet expired. Ashmore, 165 Wash.2d at 952, 205 P.3d 111. The same is true here as concerns CHD's statute of limitations and accord and satisfaction claims.
¶ 20 Further, CHD filed this quiet title action in order to determine the amount secured by the deed of trust. Taggart's argument focuses on the amount owed, not necessarily the amount secured by the deed of trust. The trial court may have been similarly preoccupied, ruling that CHD was "judicially estopped from claiming any amount different than it claimed in its Bankruptcy statement absent of [sic] proof of payments." CP at 241 (emphasis added). These aspects, however, are significantly distinguishable in the context of this action. Because of the inconsistent statements CHD made in the bankruptcy action, it cannot be said that CHD took a position in the superior court that is clearly inconsistent with its position in bankruptcy court.
¶ 21 Thus, the first factor in the judicial estoppel analysis does not favor estoppel.
The second core factor asks whether judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Miller, 164 Wash.2d at 539, 192 P.3d 352.
¶ 22 As part of this factor, the party must convince the court to accept the previous position taken by the party. New Hampshire, 532 U.S. at 755, 121 S.Ct. 1808; Miller v. Campbell, 137 Wash.App. 762, 769, 155 P.3d 154 (2007) (quoting In re Coastal Plains, Inc., 179 F.3d 197, 206 (5th Cir. 1999)), aff'd, 164 Wash.2d 529, 192 P.3d 352; Skinner v. Holgate, 141 Wash.App. 840, 848, 173 P.3d 300 (2007); but see 14A KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 35.57 (1st ed. 2003). Because the doctrine of judicial estoppel seeks to preserve judicial integrity, "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces `no risk of inconsistent court determinations' and thus poses little threat to judicial integrity." New Hampshire, 532 U.S. at 750-51, 121 S.Ct. 1808 (quoting United States v. C.I.T. Constr., Inc. of Tex., 944 F.2d 253, 259 (5th Cir.1991)). As reasoned by the Sixth Circuit, although the requirement that the party's prior argument be accepted by the court "allows parties to contradict themselves in court, it threatens only the integrity of the parties, not of the court." Teledyne Indus., Inc. v. Nat'l Labor Relations Bd., 911 F.2d 1214, 1218 (6th Cir. 1990).
¶ 23 Here, the bankruptcy case was dismissed without the implementation of a reorganization plan. The bankruptcy was not successful and CHD did not convince the bankruptcy court to accept its position. Because the bankruptcy was dismissed without discharge or confirmation of a plan, there was no judicial acceptance. Stallings v. Hussmann Corp., 447 F.3d 1041, 1049 (8th Cir.2006); 3D Constr. and Dev., L.L.C. v. Old Standard Life Ins. Co., 2005 UT App. 307, 117 P.3d 1082, 1086; cf. Jackson v. Hancock & Canada, L.L.P., 245 S.W.3d 51, 54-57 (Tex.App.2007).
¶ 24 Taggart argues that judicial acceptance of CHD's later position would create the perception that either the bankruptcy court or the superior court was misled. It explains that acceptance of the later position would imply to the bankruptcy court that CHD received a windfall gain to the detriment of other creditors, while acceptance of the earlier position would indicate to the superior court that CHD was attempting to scam its creditors.
¶ 25 Again, Ashmore is instructive. In Ashmore, the Washington Supreme Court held that the court correctly granted an injunction in light of the interest asserted by the wife's estate. The court's acceptance of the later assertion by the wife's estate that the agreement had expired would not create a perception that the court was misled in its *235 earlier injunction decision. Instead, it would be perceived that the agreement expired after the injunction was granted. Ashmore, 165 Wash.2d at 952, 205 P.3d 111.
¶ 26 Here, CHD offered a reorganization plan based on CHD's representations that Taggart claimed $41,000 and was a secured creditor. By the trial court's acceptance of Taggart's later assertions  that the statute of limitations had expired on the contract underlying the debt and/or that Taggart's acceptance of the payoff constituted accord and satisfaction of the debt claim  would not create the perception that the bankruptcy court or its creditors were misled as to the status of CHD's estate. Instead, it would be perceived that the passage of time and the events involving the payoff occurred subsequent to the failed bankruptcy plan.
¶ 27 As to the amount secured by the deed of trust, the superior court's acceptance of CHD's position in the quiet title action, which seeks to determine the amount secured by the deed of trust, would not imply that either the bankruptcy court or the superior court was misled. In fact, CHD's inconsistent representations in the bankruptcy as to the amount secured by the deed of trust highlights the need for judicial resolution of the issue.[2]
¶ 28 On balance, the second factor does not favor estoppel.
¶ 29 For the third core factor the court considers whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Miller, 164 Wash.2d at 540, 192 P.3d 352. Taggart argues that CHD's inconsistent position would permit CHD to derive a windfall of almost $28,000 of the $41,000 amount owed. That is not the case.
¶ 30 Even if the superior court were to find that only the expressly identified $17,000 is secured by the deed of trust, the other amounts claimed by Taggart still exist  they simply are not covered by the deed of trust. Judicial resolution of the amount covered by the deed of trust, even if it were a lesser amount than that claimed by the creditor, would not unjustly enrich the debtor. Instead, it would resolve the issue on the merits, which is the preference in Washington law. Griffith v. City of Bellevue, 130 Wash.2d 189, 192, 922 P.2d 83 (1996).
¶ 31 Further, resolution of the quiet title action on the basis of CHD's statute of limitations claim and/or accord and satisfaction claim would not result in a windfall to CHD at Taggart's expense. The events underlying these claims were wholly within Taggart's control. The statute of limitations claim is grounded in Taggart's failure to reduce its claim to judgment and then execute on it. If the statute of limitations has expired, the debt is not extinguished; Taggart is simply left with no remedy to collect on the obligation. Jordan v. Bergsma, 63 Wash.App. 825, 827-28, 822 P.2d 319 (1992). The accord and satisfaction claim is also attributable to Taggart's conduct through its alleged escrow agent. Taggart cannot claim that its own failure to act or careless actions would derive an unfair advantage to CHD or impose an unfair detriment on Taggart.
¶ 32 We conclude that judicial estoppel does not apply. We therefore reverse the order on summary judgment and remand to vacate the judgment and for further proceedings. We deny Taggart's request for attorney fees.
WE CONCUR: SWEENEY and KULIK, JJ.
NOTES
[1] The reason for the $1,000 discrepancy between the amount shown on the note and deed of trust is unclear.
[2] We note one troubling aspect. CHD's final organization plan, which represents that Taggart was a secured creditor and that the amount of the claim was $41,000, placed Taggart's claim in a position of priority over unsecured creditors. In the quiet title action, CHD asserted that some work Taggart claimed to be a part of the $41,000 CHD owed was not owed by the corporation, but personally owed by CHD's family members. Obviously, CHD should not have included in the bankruptcy debts not owed by the corporation. Ultimately, because the plan was not implemented and the interests of the secured creditors are not entirely clear from the record, that aspect is moot. Moreover, while the party's integrity may be threatened, the court's integrity is not. Teledyne Indus., Inc., 911 F.2d at 1218.