

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE OCT 29 2015

_Madsen, C. J._
CHIEF JUSTICE

This opinion was filed for record
at 8:00am on Oct. 29, 2015

Ronald R. Carpenter
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) ) | No. 89706-9 |
| MATHEW WILSON MOI, | ) ) | En Banc |
| Petitioner. | ) ) | Filed OCT 29 2015 |
| | ) ) | |

GONZÁLEZ, J.—It is a bedrock principle of constitutional law that "[n]o person shall . . . be twice put in jeopardy for the same offense." WASH. CONST. art. I, § 9. In 2006, Mathew Moi was tried for the murder of Keith McGowan and for unlawful possession of the gun that killed McGowan. No physical evidence tied Moi to the gun, and perhaps because of that the jury was unable to reach a verdict on the murder charge. Based on the same evidence, Moi was acquitted of unlawful possession of the gun. On its second try, the State secured a murder conviction, still arguing that McGowan was killed with the gun Moi was acquitted of possessing. The State concedes that the same issue of ultimate fact was decided in both trials but argues it would be unjust to apply double jeopardy against it because it

was surprised by Moi's testimony in the first trial that someone else shot McGowan and because Moi had moved to sever the two charges. Given the State's concession, we grant the personal restraint petition.

FACTS

On October 19, 2004, someone shot and killed McGowan when he went to his front door. Suspicion soon fell on Moi. Based on witness testimony that placed Moi at the scene and an ex-girlfriend's statement that Moi told her he had killed someone that night, Moi was charged with murder. Moi admitted he was there when McGowan was shot but denied being the shooter.

The State's crime lab later determined that McGowan was killed by a gun recovered from a nearby storm drain. No fingerprints or other direct physical evidence linked the gun to Moi, but the State offered testimony that suggested Moi had entrusted the gun to friends who had tossed it into the storm drain.

Moi had prior juvenile convictions for second degree robbery and thus was not permitted to possess firearms. *See* RCW 9.41.040. Shortly before the first trial, the State added a charge of unlawful possession of a firearm based on the same constellation of facts alleged in the murder charge. Moi moved to sever the two charges to shield the jury in the murder case from

2

the potential prejudicial effect of knowing he had been convicted of second degree robbery as a juvenile. The State opposed severance, arguing that severing the charges "would require the State to present the exact same case a second time." Verbatim Report of Proceedings (VRP) (Oct. 24, 2006) at 236. The State suggested, among other things, that Moi waive his right to a jury trial and have the firearm charge tried to the bench at the same time the murder charge was tried to a jury. Ultimately, the parties agreed to do that.

After 10 days of testimony and 13 hours of deliberation, the first jury was unable to reach a verdict and the judge declared a mistrial. *State v. Moi*, noted at 165 Wn. App. 1006, 2011 WL 6825264, at *1. The trial judge delayed ruling on the unlawful possession charge to allow briefing on the possible double jeopardy implications and to allow the parties to have plea discussions. The parties were unable to reach a plea agreement but agreed the judge should reach judgment on the unlawful possession charge based on the evidence already presented. After asking a few questions, the judge concluded the State had not carried its burden of proof and acquitted Moi of the charge.

Moi was tried again for murder in 2007. The case was assigned to a different judge, who allowed the State to present motive evidence the first judge had excluded. The second jury returned a guilty verdict. Moi's direct

appeal, which did not raise a double jeopardy challenge, was unsuccessful. *Id.* Moi, pro se, filed this timely personal restraint petition, arguing that double jeopardy did not allow him to be tried for murder with a gun he had been acquitted of possessing. We granted review and assigned counsel. *In re Pers. Restraint of Moi*, 182 Wn.2d 1015 (2015).

## ANALYSIS

"No person shall . . . be twice put in jeopardy for the same offense." WASH. CONST. art. I, § 9; U.S. CONST. amend. V. Our two constitutions provide the same protection against double jeopardy. *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004) (citing *State v. Gocken*, 127 Wn.2d 95, 100, 896 P.2d 1267 (1995)). We generally review double jeopardy challenges de novo, but as the party asserting collateral estoppel, Moi bears the burden of proof. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005) (citing *State v. Johnston*, 100 Wn. App. 126, 137, 996 P.2d 629 (2000)); *State v. Williams*, 132 Wn.2d 248, 254, 937 P.2d 1052 (1997) (citing *McDaniels v. Carlson*, 108 Wn.2d 299, 303, 738 P.2d 254 (1987)). As this is a personal restraint petition alleging constitutional error, Moi bears the burden of showing actual and substantial prejudice, which he satisfies if he shows double jeopardy is violated. *In re Pers. Restraint of*

*Orange*, 152 Wn.2d at 804, 822 (citing *In re Pers. Restraint of Lile*, 100 Wn.2d 224, 225, 668 P.2d 581 (1983)).

Among many other things, "the Double Jeopardy Clause incorporates the doctrine of collateral estoppel." *Dowling v. United States*, 493 U.S. 342, 347, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990) (citing *Ashe v. Swenson*, 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970)). Under the collateral estoppel doctrine, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit," including a criminal prosecution. *Ashe*, 397 U.S. at 443. The *Ashe* case is illustrative. Several masked men had robbed a six-player poker game. *Id.* at 437. Ashe was initially charged with robbing just one of the players. *Id.* at 438. After the jury acquitted Ashe of robbing that player, the State charged him with robbing another, "frankly conced[ing] that following the petitioner's acquittal, it treated the first trial as no more than a dry run for the second prosecution." *Id.* at 439, 447. The Supreme Court reviewed the evidence presented, concluded that "[t]he single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers," and held that double jeopardy barred the subsequent prosecution. *Id.* at 445. The issue of ultimate fact in that case was whether Ashe had robbed the poker game, not

which player he had robbed. *Id.* at 446 ("[T]he name of the victim, in the circumstances of this case, had no bearing whatever upon the issue of whether the petitioner was one of the robbers."). Once acquitted, the State could not "constitutionally hale him before a new jury to litigate that issue again." *Id.*

Following *Ashe*, Moi argues that the State was collaterally estopped from prosecuting him for murder in 2007 when the State's theory of the case was that he shot the victim with a gun he was acquitted of possessing in 2006. Pet'r's Suppl. Br. at 11 (citing *Ashe*, 397 U.S. at 446). Collateral estoppel in Washington has four elements that the party asserting it (here Moi) must establish:

> "(1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea of collateral estoppel is asserted must have been a party or in privity with a party to the prior litigation; and (4) application of the doctrine must not work an injustice."

*Williams*, 132 Wn.2d at 254 (quoting *State v. Cleveland*, 58 Wn. App. 634, 639, 794 P.2d 546 (1990)).[1] Here, the State concedes that Moi has met the first three elements. Wash. Supreme Court oral argument, *In re Pers. Restraint of Moi*, No. 89706-9 (Sept. 8, 2015), at 15 min., 52 sec. through 17

---

[1] We stated the elements slightly differently in *State v. Tili*, 148 Wn.2d 350, 361, 60 P.3d 1192 (2003) (citing *Rains v. State*, 100 Wn.2d 660, 665, 674 P.2d 165 (1983)). The parties do not argue that the differences are material to this case.

min., 7 sec.[2] Thus, the only question is whether application of the doctrine will not work an injustice. *Williams*, 132 Wn.2d at 254 (quoting *Cleveland*, 58 Wn. App. at 639).

First, the State argues that applying collateral estoppel would work an injustice because Moi created the situation by moving to sever the murder and unlawful possession charges in his first trial. Suppl. Br. of Resp't at 17-18 (citing *Jeffers v. United States*, 432 U.S. 137, 154, 97 S. Ct. 2207, 53 L. Ed. 2d 168 (1977); *Ohio v. Johnson*, 467 U.S. 493, 502, 104 S. Ct. 2536, 81 L. Ed. 2d 425 (1984)); Wash. Supreme Court oral argument, *supra*, at approximately 20 min.; VRP (Oct. 24, 2006) at 239, 241. We find this unpersuasive.

Moi did nothing wrong by seeking severance. The probative value of Moi's juvenile criminal history to the murder charge was slight, and its potential prejudicial effect on the jury was great. *See generally State v. Gunderson*, 181 Wn.2d 916, 923, 337 P.3d 1090 (2014); *State v. Smith*, 106 Wn.2d 772, 779-80, 725 P.2d 951 (1986). Nor did he do anything wrong by acceding to the State's suggestion that he waive his right to a jury on the unlawful possession charge and have it tried to the bench. Neither of the

---

[2] Http://www.tvw.org/index.php?option=com_tvwplayer&eventID=2015090006. The State disputed whether the ultimate issues decided were identical in its brief to this court but conceded that element at oral argument. Wash. Supreme Court oral argument, *supra*, at approximately 17 min., 12 sec.; Suppl. Br. of Resp't at 15-16.

cases the State cites suggest otherwise. In *Jeffers*, the court held that it would not apply the "same evidence" rule from *Blockburger* to cases where the defendant successfully opposes the government's attempt to try charges together. 432 U.S. at 139, 144, 153-54 (citing *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)). Moi's motion to sever was unsuccessful, and his counsel, as a second best option, acceded to the State's proposal that the unlawful possession charge be tried to the bench. VRP (Oct. 24, 2006) at 242-43. Further, the ultimate question in *Jeffers* was which double jeopardy test applied, not whether it would be inequitable to apply collateral estoppel. *See Jeffers*, 432 U.S. at 139, 144. In *Johnson*, the defendant was indicted on charges of murder, aggravated robbery, involuntary manslaughter, and grand theft in the killing of and theft from one victim. 467 U.S. at 494-95. At arraignment, and over the State's objection, Johnson pleaded guilty to the lesser charges and sought to dismiss the greater ones as barred by double jeopardy. *Id.* at 494. The Supreme Court rejected the argument because the State had not had its "one full and fair opportunity to convict those who have violated its laws." *Id.* at 502 (citing *Arizona v. Washington*, 434 U.S. 497, 509, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978)). While the court might have been disinclined to reward the defendants' clever pleading in both cases, neither analysis turned on that

fact. In both cases, the decision turned on whether a particular double jeopardy analysis applied under the facts.

Second, the State argues that application of the doctrine would work an injustice because Moi himself deprived it of a full and fair opportunity to present its case. Suppl. Br. of Resp't at 19 (citing *Standefer v. United States*, 447 U.S. 10, 22, 100 S. Ct. 1999, 64 L. Ed. 2d 689 (1980)); *see* VRP (Nov. 15, 2006) at 66, 109. *Standefer* observed that "in a criminal case, the Government is often without the kind of 'full and fair opportunity to litigate' that is a prerequisite of estoppel." 447 U.S. at 22 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 325, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979)). For the first time during his 2006 trial testimony, Moi stopped blaming one unknown man for having shot McGowan and instead testified that someone he knew named Jason[3] had committed the murder. Since, the State contends, it did not know about Jason prior to the first trial, it was deprived of a full and fair opportunity to investigate or rebut Moi's testimony.

But it could not have come as a surprise to the State that Moi was blaming someone else for the shooting. Moi did that from his first conversation with police. The State had ample opportunity to cross-examine Moi on why he did not point his finger at Jason before. While more

---

[3] Moi was uncertain of Jason's last name.

opportunity to investigate this new suspect would doubtlessly have been helpful to the State, it is a far cry from the situation in *Standefer*, where the question was whether the defendant, the head of Gulf Oil Corporation's tax department, could be convicted of aiding and abetting a United States Internal Revenue Service (IRS) agent in receiving unlawful compensation (in the form of vacations paid for by the corporation) after the IRS agent had been acquitted of wrongdoing. 447 U.S. at 11-12. The United States Supreme Court declined to extend nonmutual collateral estoppel to the case for many reasons, including "the simple, if discomforting, reality that 'different juries may reach different results under any criminal statute. That is one of the consequences we accept under our jury system.'" *Standefer*, 447 U.S. at 25 (quoting *Roth v. United States*, 354 U.S. 476, 492 n.30, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957)). But while juries may reach different results, we are faced here with the fact that Moi was acquitted in 2006 of possessing the gun that killed McGowan. We do not find the State's argument that Moi deprived it of a full and fair opportunity to prosecute him persuasive.

Here, the parties did have a full criminal trial where, at the suggestion of the State, the trial judge decided one of the charges. In *Thompson v. Department of Licensing*, we observed that "our case law on this injustice

10

element is most firmly rooted in procedural unfairness." 138 Wn.2d 783, 795, 982 P.2d 601 (1999). "'Washington courts look to whether the parties to the earlier proceeding received a full and fair hearing on the issue in question.'" *Id.* at 795-96 (quoting *In re Marriage of Murphy*, 90 Wn. App. 488, 498, 952 P.2d 624 (1998)). Given this full trial; given the fact that in essence, the State was able to treat its first unsuccessful 2006 prosecution as a "dry run" for its successful 2007 prosecution, *contra Ashe*, 397 U.S. at 447; and given the State's concession that the same issue of ultimate fact was decided in both trials, we find application of collateral estoppel does not work an injustice.

Our decision is bolstered by a recent Pennsylvania Supreme Court opinion that found collateral estoppel barred retrial in a factually similar situation. *See Commonwealth v. States*, 595 Pa. 453, 938 A.2d 1016 (2007). There, the defendant, Lawrence States, was the only survivor of a single car accident that killed two people. *Id.* at 456. States was charged with several crimes related to driving under the influence, driving without a license, and causing the deaths. *Id.* Two of the charges were for "Accidents Involving Death or Personal Injury While Not Properly Licensed." *Id.* Like Moi, States moved to sever the latter charges since they would expose the jury to a prejudicial fact: in States's case, the fact he did not have a valid license at

the time of the accident. *Id.* As happened here, the parties agreed to try that charge to the bench simultaneously to a jury trial on the remaining charges. *Id.* After the jury deadlocked, the trial court acquitted States of Accidents Involving Death or Personal Injury While Not Properly Licensed on the grounds that it was not convinced beyond a reasonable doubt that States was the driver of the vehicle—a fact critical to all of the charges States faced. *Id.* at 457. The Pennsylvania Supreme Court found the State was collaterally estopped from retrying States on the remaining charges. *Id.* at 456.

Also bolstering our conclusion is a recent Ninth Circuit opinion, *Wilkinson v. Gingrich*, No. 13-56952, 2015 WL 5155502 (9th Cir. Sept. 3, 2015).[4] Wilkinson had been charged with speeding. *Id.* at *1. He was

---

[4] The relevant collateral estoppel test used in Pennsylvania and the Ninth Circuit differs from our own. Those courts engage in the following inquires:

> "1) an identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine;
>
> "2) an examination of the record of the prior case to decide whether the issue was 'litigated' in the first case; and
>
> "3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case."

*States*, 595 Pa. at 460 (quoting *Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246 (1988)). This test is more favorable to the defendant, as it does not require the court to consider whether application of the doctrine will work an injustice. *See Williams*, 132 Wn.2d at 254. Since the parties do not address the differences between the two tests, this case does not give us an apt opportunity to explore them. However, we are not unmindful that should we find for the State, Moi might well be entitled to habeas relief under this test. *See Wilkinson*, 2015 WL 5155502; *see also Crace v. Herzog*, 798 F.3d

acquitted after testifying that he was not the driver. *Id.* at *1-2. While there was no transcript of the trial, it appears Wilkinson inculpated an English cousin with a name similar to his own. *Id.* at *2-3. After an investigation, the State of California successfully charged Wilkinson with perjury for falsely testifying in his speeding trial. *Id.* at *2. Applying the same collateral estoppel test as the Pennsylvania court, the Ninth Circuit invalidated Wilkinson's perjury conviction. *Id.* at *4. The Ninth Circuit found that "[t]he issue in the first case (whether Wilkinson was the driver) and the issue in the second case (whether Wilkinson was telling the truth when he denied being the driver) are both 'sufficiently similar' and 'sufficiently material' for collateral estoppel and the Double Jeopardy Clause to apply." *Id.* at *5. "A factfinder's determination that the government failed to carry its burden on an issue in the first proceeding has preclusive effect in a subsequent proceeding raising that same issue, provided that both proceedings are governed by the same standard of proof." *Id.* at *6 (citing *Charles v. Hickman*, 228 F.3d 981, 985-86 (9th Cir. 2000)). In Pennsylvania and California, as here, the State had its full and fair opportunity to present its case. It did not prevail. Double jeopardy prevents

---

840, 843, 846 (9th Cir. 2015) (disapproving of *In re Personal Restraint of Crace*, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012) and *State v. Grier*, 171 Wn.2d 17, 246 P.3d 1260 (2011)).

it from placing the defendant in jeopardy again. Moi has met his burden of showing actual and substantial prejudice following from this constitutional error.[5]

## CONCLUSION

We grant the personal restraint petition and remand to the trial court for further proceedings consistent with this opinion.

---

[5] Since Moi has prevailed on this issue, we do not address the remaining grounds raised in his personal restraint petition.

Gonzáles, J.

WE CONCUR:

Madsen, C.J.

Johnson

Owens, J.

Fairhurst, J.

Stephens, J

Wiggins, J.

Gerdy McCled, Jr

Jn, J