COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38801-8-III |
|  | ) |  |
| Respondent, | ) |  |
|  | ) | ORDER AMENDING OPINION |
| v. | ) |  |
|  | ) |  |
| BLAKE ALEXANDER BADGLEY, | ) |  |
|  | ) |  |
| Petitioner. | ) |  |

IT IS ORDERED the opinion filed July 27, 2023, is amended as follows:

The first full paragraph on page 33 that reads:

This appeal asks whether, based on the concepts of double jeopardy and collateral estoppel, must the charge of second degree rape now be dismissed with prejudice? The State argues it does not because the jury, when acquitting Blake Badgley of third degree rape, could have found that Jane was awake, but never said "no," such that she did not clearly express a lack of consent. We reject the State's contention because the State never forwarded such an argument before the trial court and actually argued to the judge and jury that Jane during the entire sexual encounter. We answer the issue on appeal in the affirmative because collateral estoppel, in the context of the double jeopardy clause, precludes the State from asserting an argument forwarded to convict of one crime, which argument the jury previously rejected for purposes of another crime.

shall be amended to read:

This appeal asks whether, based on the concepts of double jeopardy and collateral estoppel, must the charge of second degree rape now be dismissed with prejudice? The State argues it does not because the jury,

when acquitting Blake Badgley of third degree rape, could have found that Jane was awake, but never said "no," such that she did not clearly express a lack of consent. We reject the State's contention because the State never forwarded such an argument before the trial court and actually argued to the judge and jury that Jane remained asleep during the entire sexual encounter. We answer the issue on appeal in the affirmative because collateral estoppel, in the context of the double jeopardy clause, precludes the State from asserting an argument forwarded to convict of one crime, which argument the jury previously rejected for purposes of another crime.

PANEL: Judges Fearing, Lawrence-Berrey, Staab

FOR THE COURT:

_George Fearing_____

GEORGE FEARING, Chief Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38801-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BLAKE ALEXANDER BADGLEY, | ) | |
| | ) | |
| Petitioner. | ) | |

FEARING, C.J. —

Under the Double Jeopardy Clause, the government may not take a mulligan. *United States v. Castillo-Basa*, 483 F.3d 890, 893 (9th Cir. 2007).

The elements of second degree rape include the victim being physically helpless or otherwise unable to consent to sexual intercourse. The elements of third degree rape include the victim clearly expressing a lack of consent. The State charged appellant Blake Badgley with both degrees of rape after he engaged in sexual intercourse with Jane, a pseudonym. When arguing that Badgley committed both crimes, the State asserted that Jane's alcohol-induced sleep qualified as an inability to consent and constituted a clear expression of lack of consent to intercourse. Badgley defended both charges in contending that Jane was awake and consented. The jury acquitted Badgley of the crime of third degree rape. The jury deadlocked on the charge of second degree rape.

No. 38801-8-III
*State v. Badgley*

This appeal asks whether, based on the concepts of double jeopardy and collateral estoppel, must the charge of second degree rape now be dismissed with prejudice? The State argues it does not because the jury, when acquitting Blake Badgley of third degree rape, could have found that Jane was awake, but never said "no," such that she did not clearly express a lack of consent. We reject the State's contention because the State never forwarded such an argument before the trial court and actually argued to the judge and jury that Jane during the entire sexual encounter. We answer the issue on appeal in the affirmative because collateral estoppel, in the context of the double jeopardy clause, precludes the State from asserting an argument forwarded to convict of one crime, which argument the jury previously rejected for purposes of another crime.

FACTS

This prosecution arises from the alleged rape of Jane, by appellant Blake Badgley in June 2018. Badgley was then twenty years old, and Jane was nineteen years of age. Badgley admits to sexual intercourse but contends Jane consented by her earlier comments and her conduct.

A mutual friend of Blake Badgley and Jane hosted back-to-back parties in Monitor. The first party occurred either on the night of June 15 or 16, 2018. The second party convened on the night of June 17 and continued into the morning hours of June 18. Badgley and Jane attended both parties.

During the second party, Jane consumed one or more drinks laced with vodka. We do not know the total quantity of alcohol imbibed by Jane. While in her drunken state, Jane undressed herself and ran around the house naked. She told males at the party that she wished to engage in sex. She declared: "'I need some dick.'" Report of Proceedings (RP) at 318. She attempted to grab the genitals of Blake Badgley and other males.

Jane retired to bed in a bedroom located in the party house around 3:00 a.m. on June 18. She returned, however, to the living room shortly thereafter while wearing only underwear. She announced again that she "'need[ed] some dick.'" RP at 331. Some party attendees shepherded Jane back to bed.

During trial, Jane testified that her last clear memory, from the events of June 17-18, entailed going inside the party house to play Mario Kart after being in an outside hot tub. She later awoke in the night with someone on top of her. She felt someone penetrating her vagina. The male ejaculated on her stomach, after which he commented: "'Stay where you're at. I'm going to get something to clean up.'" RP at 81. She fell asleep once again. She awoke a second time completely naked with Blake Badgley next to her in the bed.

During trial Jane averred that, when she asked Blake Badgley if they had sex, he replied: "'Yeah. But I couldn't tell if you were into it because you kept snoring.'" RP at

3

92.  She denied ever telling Badgley that she desired sex with him.  She repudiated

"being physical" with Badgley.  RP at 106.

After Jane reported rape, Chelan County Sheriff Deputy Paul Nelson interviewed

Blake Badgley.  Badgley did not testify at trial.  During trial, the State played the

recording of the interview.

During the law enforcement interview, Blake Badgley commented that, on the

night of the June 17 party, he remained awake with other young men in the living room

after Jane retired to a bedroom.  He eventually went to the bedroom because of the

uncomfortably small dimensions of the living room couch.  Badgley first commented that

Jane was awake when he entered the bedroom.  He later corrected himself and remarked

that she awoke when he rolled her over in the bed to create room for himself.  Badgley

then fell asleep for two hours and Jane returned to sleep for the same amount of time.

During the interview, Deputy Paul Nelson inquired about sexual intercourse:

> **NELSON** And then sometime at around five in the morning, you wake up and did you wake her up again?
> **BADGLEY** Yeah.
> **NELSON** How did you do that?
> **BADGLEY** I'm not sure.  Uh, waited until I could see her eyes were open, you know?
> **NELSON** Um huh.
> **BADGLEY** And then I started talking to her.
> **NELSON** And what did she say, and what did you say to her?
> **BADGLEY** Like, "Are you good?" and stuff and I just started asking her questions like that.  From what I could tell she was fine.
> **NELSON** What do you, well, did you ever ask her if she wanted to have sex?

**BADGLEY** Not, not, no, not directly.

**NELSON** So, what did you say to indicate that that's what you were trying to do?

**BADGLEY** I don't know, just body language, I guess.

**NELSON** Well, what did she say to you that made you think that she was willing to have sex with you at that time?

**BADGLEY** Um, I don't know "sleep with me" and grabbed me earlier.

**NELSON** So, she was coming on to you a few hours earlier?

**BADGLEY** Yeah

**NELSON** And a whole bunch of other people?

**BADGLEY** Yeah

**NELSON** So, after she'd been asleep for a couple hours, you felt that that was enough of a green-light for you to go in and have sex with her?

**BADGLEY** Yeah.  I wanted to make sure she was sober and see if that was alright with her.

Exhibit 8, Transcript (Ex. 8) at 19-20.

**NELSON** Ok.  And was she awake [immediately before intercourse]?

**BADGLEY** Yeah.  I saw the whites of her eyes again.

**NELSON** And what did you say to her?

**BADGLEY** I said "Are you ok, like hello."  She's like "hi."

**NELSON** Um huh.  So, I guess what I'm getting at is how did you ask her if she wanted to have sex?

**BADGLEY** Well, I mean, I just kind of figured the fact that she wanted to go ahead and grab my dick, as a clue.

. . . .

**NELSON** Ok.  Well, what did she say while you were having sex?

**BADGLEY** Really, like nothing.  Moaning, that's about it.

**NELSON** Ok.  And did you recall her being, falling asleep while you were having sex?

**BADGLEY** No.  Not that I know of.

. . . .

Ex. 8 at 16-17.

**NELSON** Ok.  Do you remember hearing her snoring at all while

you were having sex?
      **BADGLEY** No.  That didn't happen.
      **NELSON** Uh, ok.  And in the morning did you tell her that she had
been snoring?
      **BADGLEY** I didn't hear her snore at all.

Ex. 8 at 25.

## PROCEDURE

The State of Washington charged Blake Badgley with one count of rape in the second degree and one count of rape in the third degree.  The State alleged the same act of intercourse as the basis of each crime.  At trial, Badgley conceded he engaged in sexual intercourse with Jane during the early morning hours of July 18, 2018.  The parties contested at trial whether Jane was awake at the time of the sexual intercourse.

RCW 9A.44.050 governs the crime of rape in the second degree and declares, in part:

> (1) A person is guilty of rape in the second degree when . . . the person engages in sexual intercourse with another person:
> . . . .
> (b) When *the victim is incapable of consent by reason of being physically helpless* or mentally incapacitated.

(Emphasis added.)  RCW 9A.44.060, which controls the crime of rape in the third degree, read in relevant part in 2018:

> (1) A person is guilty of rape in the third degree when . . . such person engages in sexual intercourse with another person:
> (a) Where the victim did not consent as defined in RCW 9A.44.010(7), to sexual intercourse with the perpetrator and *such lack of consent was clearly expressed by the victim's words or conduct.*

6

(Emphasis added.)

At the conclusion of the State's case, Blake Badgley moved to dismiss both counts of rape. As to second degree rape, Badgley contended that no evidence supported a finding that Jane was physically unable to express consent, an element of the crime. As to the third degree rape charge, Badgley maintained that the undisputed facts established that Jane never clearly expressed her lack of consent to sex, an element of the crime.

In opposition to Blake Badgley's halftime motion to dismiss, the State's attorney asserted that, because Jane fell "asleep," she was physically helpless to consent to intercourse for purposes of second degree rape. The State conceded that it needed to demonstrate beyond a reasonable doubt that Jane clearly expressed a lack of consent by word or conduct to convict Badgley of third degree rape. The State argued that the act of sleeping clearly expressed the lack of consent. The prosecuting attorney intoned:

> Similarly as to Count II [third degree rape], her lack of consent has to be expressed clearly through words or conduct. If her conduct is not indicating that she wants to have sex with him, then it's her lack of consent is being express. He had told Detective Nelson he took her consent based on her behavior two to three hours prior when she was drunk and acting out. That is not a sufficient basis for consent at the time of the act. And that is the requirement that she has to be actively consenting at the time of the act. She was not and, therefore, there is sufficient evidence for both cases—for counts to go to the jury.

RP at 686-87.

The superior court denied Blake Badgley's motion to dismiss. The court

7

remarked: "there is clearly enough evidence for [both counts] to go to the jury." RP at

687.

During closing statement, the State argued to the jury:

> [Jane] didn't consent. Her lack of consent was clearly expressed by her inability to act. Both of these same things can be true. She can be both physically helpless and not be consenting at the same time. She was both incapable of consent and unable to consent.

RP at 774.

The jury acquitted Blake Badgley of rape in the third degree. The trial court

declared a mistrial on the count of rape in the second degree because of a jury deadlock

on that charge.

Blake Badgley thereafter filed a motion to dismiss the second degree rape charge.

He argued that collateral estoppel, as incorporated into the double jeopardy clause, barred

the State from retrying him on second degree rape. According to Badgley, the jury's

acquittal on third degree rape decided the question of whether Jane was asleep such that

she was incapable of giving consent by reason of being physically helpless. Since the

State argued that sleeping functioned as the message of a lack of consent, the jury must

have found that Jane was awake during intercourse and thus capable of giving consent.

The trial court denied Blake Badgley's motion to dismiss. In an order denying the

motion, the superior court entered the following findings of fact:

> 7. That the State argued that [Jane] was sleeping at the time of sexual intercourse.

8

8. That the State argued that because [Jane] was sleeping, she was incapable of consenting to sexual intercourse by reason of being physically helpless for the purposes of Rape in the Second Degree.
9. That the State also argued that [Jane's] sleeping was conduct that clearly expressed her lack of consent for the purposes of Rape in the Third Degree.

Clerk's Papers at 282.

## LAW AND ANALYSIS

On appeal, Blake Badgley repeats the same argument forwarded below after acquittal on third degree rape. We agree that collateral estoppel, as incorporated by the double jeopardy clause, precludes the State from continuing its prosecution for second degree rape. In so ruling, we note that the State argues on appeal positions contrary to those stances it advanced before the trial court, in response to the motion to dismiss at the close of the State's evidence, and positions argued to the jury during closing.

We emphasize that the trial court found that the State argued that Jane's sleeping meant both that she was physically helpless to consent and that she clearly expressed a lack of consent. The trial transcript readily confirms these findings of fact. The State never argued, before the trial court or the jury, that Jane was awake but never expressed a lack of consent.

Article I, section 9, of the Washington State Constitution and the Fifth Amendment to the United States Constitution prohibit the State from trying a defendant for the same offense twice. *State v. Heaven*, 127 Wn. App. 156, 161, 110 P.3d 835

(2005). Therefore, collateral estoppel's applicability in a particular case is no longer a matter to be left for state court determination under the broad bounds of fundamental fairness. *Ashe v. Swenson*, 397 U.S. 436, 442-43, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970). For this reason, we rely principally on federal decisions. The Washington Supreme Court has not expanded the scope of our state constitution's double jeopardy clause beyond federal protection. *State v. Eggleston*, 164 Wn.2d 61, 71, 187 P.3d 233 (2008); *State v. Heaven*, 127 Wn. App. 156, 161 (2005).

Double jeopardy entails the right of an accused to be free of repeated prosecutions in which the government retries him until it obtains a guilty verdict. *United States v. Castillo-Basa*, 483 F.3d 890, 893 (9th Cir. 2007). The double jeopardy clause demands that the government present its strongest case at the first trial. *United States v. Castillo-Basa*, 483 F.3d 890, 893 (9th Cir. 2007). The guarantee recognizes the vast power of the sovereign, the ordeal of a criminal trial, and the injustice our criminal system would invite if prosecutors could treat trials as dress rehearsals until they secure the convictions they seek. *Currier v. Virginia*, ___ U.S. ___, 138 S. Ct. 2144, 2149, 201 L. Ed. 2d 650 (2018).

The doctrine of collateral estoppel, known in modern terminology as issue preclusion, prevents a person from relitigating an issue in order to prevent legal harassment and the overuse or abuse of judicial resources. *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 336, 125 S. Ct. 2491, 162 L. Ed. 2d 315

(2005); *Allen v. McCurry*, 449 U.S. 90, 94-95, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980).

Since the goals of collateral estoppel overlap with the policies behind the double jeopardy

clause, the federal constitution's guaranty against double jeopardy incorporates the

common law doctrine of collateral estoppel. *Ashe v. Swenson*, 397 U.S. 436, 442 (1970);

*State v. Eggleston*, 129 Wn. App. 418, 426-27, 118 P.3d 959 (2005), *as amended* (Sept.

30, 2005), *aff'd*, 164 Wn.2d 61, 187 P.3d 233 (2008). The doctrine, although created in

civil litigation, extends to criminal law. *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). We

do not know if the bar of collateral estoppel is coextensive with the bar of double

jeopardy. For purposes of this appeal, the two concepts merge.

Collateral estoppel and double jeopardy not only preclude prosecution of the same

crime after a final judgment, but protect against a series of prosecutions involving the

same fundamental issues, in which the government presents additional arguments and

evidence at each iteration. *United States v. Castillo-Basa*, 483 F.3d 890, 893 (9th Cir.

2007). One adjudged not guilty may not be held to answer more than once for conduct

that the jury has decided he did not commit regardless of whether the State pleads a

different crime. *United States v. Castillo-Basa*, 483 F.3d 890, 896 (9th Cir. 2007). A

criminal defendant may assert a defense of collateral estoppel when the defendant faces

relitigation of an issue already determined at a previous proceeding. *State v. Heaven*, 127

Wn. App. 156, 162 (2005).

A reviewing court must evaluate the trial record of a prosecution in order to discern what issues a jury previously resolved. Relatedly, courts should not apply the rule of collateral estoppel in criminal cases with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. *Ashe v. Swenson*, 397 U.S. 436, 444 (1970); *State v. Harrison*, 148 Wn.2d 550, 561, 61 P.3d 1104 (2003).

Collateral estoppel looms as a constitutional fact that a court must decide through an examination of the entire record. *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). When a previous judgment of acquittal was based on a general verdict, as is usually the case, the court should examine the record of the prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict on an issue other than that which the defendant seeks to foreclose from consideration in a second proceeding. *Ashe v. Swenson*, 397 U.S. 436, 444 (1970). The reviewing court must view all the circumstances of the proceedings. *Sealfon v. United States*, 332 U.S. 575, 579, 68 S. Ct. 237, 92 L. Ed. 180 (1948). The court should consider the arguments asserted in light of the evidence. *United States v. Castillo-Basa*, 483 F.3d 890, 896 (9th Cir. 2007). If the accused can show that an issue of fact essential for the proof of an offense for which the defendant is later prosecuted was necessarily decided in a prior proceeding, that determination will be binding on the later prosecution. *Wilkinson v. Gingrich*, 806 F.3d 511, 516-17 (9th Cir. 2015).

Three principles principally impact this appeal. First, separate statutory crimes need not be identical either in constituent elements or in actual proof in order to be the same within the meaning of the constitutional prohibition of double jeopardy. *Brown v. Ohio*, 432 U.S. 161, 164, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *United States v. Castillo-Basa*, 483 F.3d 890, 896 (9th Cir. 2007). Second, double jeopardy protects the accused from attempts to relitigate the facts underlying an earlier acquittal, not simply the same charges. *Brown v. Ohio*, 432 U.S. 161, 165 (1977); *Ashe v. Swenson*, 397 U.S. 436 (1970); *In re Personal Restraint of Moi*, 184 Wn.2d 575, 579, 360 P.3d 811 (2015). Third, a factfinder's determination that the government failed to carry its burden on an issue in the first proceeding has a preclusive effect in a subsequent proceeding raising the same issue, provided that both proceedings are governed by the same standard of proof. *Evans v. Michigan*, 568 U.S. 313, 318-19, 133 S. Ct. 1069, 185 L. Ed. 2d 124 (2013); *Wilkinson v. Gingrich*, 806 F.3d 511, 518 (9th Cir. 2015); *United States v. Castillo-Basa*, 483 F.3d 890, 902 (9th Cir. 2007).

Federal courts implement a three-step process when applying collateral estoppel in the context of double jeopardy (1) identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine, (2) an examination of the record of the prior case to decide whether the issue was litigated in the first case, and (3) an examination of the record of the prior proceeding to ascertain whether the issue was

necessarily decided in the first case. *United States v. Castillo-Basa*, 483 F.3d 890, 897 (9th Cir. 2007). Washington courts ask four questions, all which must be answered affirmatively (1) was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) was there a final judgment on the merits? (3) was the party against whom the plea of collateral estoppel is asserted a party or in privity with the party to the prior adjudication? and (4) will the application of the doctrine work an injustice on the party against whom the doctrine is to be applied? *State v. Eggleston*, 164 Wn.2d 61, 71-72 (2008); *State v. Tili*, 148 Wn.2d 350, 361, 60 P.3d 1192 (2003). Both tests require dismissal of the second degree rape charge.

We outline five federal decisions and two Washington decisions for enlightenment on whether double jeopardy precludes the State from retrying Blake Badgley for second degree rape. We start with two United States Supreme Court decisions.

From two centuries ago comes *Ex parte Nielsen*, 131 U.S. 176, 9 S. Ct. 672, 33 L. Ed. 118 (1889). Hans Nielsen dwelled with two wives. The United States charged him with a statute applying to Utah territory that prohibited a man from cohabitating with more than one woman at a time. Nielsen pled guilty to the charge and completed his sentence. Thereafter, the government charged Nielsen with adultery based on sexual intercourse with one of the same two women. Without analyzing double jeopardy or collateral estoppel, the United States Supreme Court dismissed the charge of adultery. The Supreme Court reasoned that cohabitation, the subject of the first crime, assumed

sexual intercourse. Since sexual intercourse was an element of adultery, the United States could not proceed with the second charge.

In *Ashe v. Swenson*, 397 U.S. 436 (1970), the United States Supreme Court introduced the doctrine of collateral estoppel and the double jeopardy clause to each other. The United States charged Bob Ashe as one of multiple individuals involved in a robbery at a poker party. The trial court instructed the jury that, even if it found that Ashe did not personally rob the victim, he was guilty of robbery if the jury found he participated in it. The jury acquitted Ashe, and the State subsequently charged and convicted him with robbing a different victim at the poker party. The Supreme Court concluded that Ashe's acquittal in the first trial foreclosed the second trial because the acquittal verdict necessarily meant that the jury was unable to conclude beyond a reasonable doubt that Ashe was one of the bandits. Collateral estoppel and double jeopardy rendered impermissible a second trial because, to convict Ashe in the second trial, the second jury would have to reach a directly contrary conclusion. By its general verdict of not guilty, the first jury had decided the ultimate fact that Ashe was not one of the robbers.

*Wilkinson v. Gingrich*, 806 F.3d 511 (9th Cir. 2015) entailed perjury charges after an acquittal. A traffic court judge acquitted James Wilkinson on charges of speeding based on a conclusion that Wilkinson was not the driver of the speeding car. Thereafter, police developed new evidence establishing Wilkinson as the driver. The State

prosecuted Wilkinson for perjury. Based on double jeopardy, the Ninth Circuit reversed the perjury conviction and dismissed the charge. The perjury charge stemmed from Wilkinson allegedly lying, during the first trial, that he was not the driver. The traffic court judge had already ruled that the State had not demonstrated Wilkinson to be the driver. It did not matter that the traffic court judge did not affirmatively find someone else to be the driver as long as the judge concluded that the State had not met its burden of proof.

*United States v. Castillo-Basa*, 483 F.3d 890 (9th Cir. 2007) also involved a prosecution for perjury. The government charged Buenaventura Castillo-Basa with illegal entry into the United States. An element of the crime required that the government show that an immigration judge had deported the accused after an earlier hearing before the judge. During the criminal trial, Castillo-Basa testified that the government never afforded him a hearing before an immigration judge. The government presented no records to the contrary. A jury acquitted Castillo-Basa of the charge. After the acquittal, the government located records of a hearing before an immigration judge and prosecuted Castillo-Basa for perjury based on his testimony to the contrary. The appeals court summarily dismissed the prosecution since the only factual issue during the first trial entailed whether Castillo-Basa underwent a deportation hearing before a judge. The acquittal necessarily meant that the jury concluded that the government had failed to

16

carry its burden of proving such a hearing. In other words, Castillo-Basa's testimony was not false. He could not later be charged with perjury.

*United States v. Romero*, 114 F.3d 141 (9th Cir. 1997) closely parallels Blake Badgley's appeal in that collateral estoppel precluded a retrial on a charge, on which the jury deadlocked. The government charged Enzo Romero with the importation of marijuana and possession of marijuana with intent to distribute. Romero agreed that he drove a car from Mexico into the United States and the car contained marijuana. Romero claimed he drove the car at the request of a woman he met two days earlier and that he did not know the car contained marijuana. The jury acquitted Romero by general verdict of the possession with intent to distribute count. The jury deadlocked on the importation count. Romero thereafter sought to dismiss the importation charge on the basis that collateral estoppel barred retrial. The appellate court agreed. The Ninth Circuit noted that courts should apply collateral estoppel with realism and rationality. Despite the general verdict, the jury had acquitted Romero with intent to deliver, which included an element of knowing possession. Therefore, the government could not thereafter proceed with the prosecution of a crime that included an element of knowing possession of marijuana. Importation of marijuana was such a crime.

The government argued in *United States v. Romero* that application of collateral estoppel was irrational under the circumstances of the prosecution. Since knowing possession of marijuana constituted an element of both crimes, the jury must not have

17

found Enzo Romero lacked knowledge or else it would have acquitted him of the importation charge. In response, the appeals court noted that the only contested fact at trial was whether Romero knew the car to contain marijuana. The court reasoned that employing suspicion as to the reason for acquittal on one charge, but not the other, would preclude the final settlement of questions of fact. The possibility that the jury acted irrationality would negate the collateral estoppel of all verdicts and conflict with the ruling in *Ashe v. Swenson*.

We move to Washington decisions. In *In re Personal Restraint of Moi*, 184 Wn.2d 575 (2015), the Washington Supreme Court followed the teachings of the United States Supreme Court in *Ashe v. Swenson*. The State charged Matthew Moi with the murder of Keith McGowan and unlawful possession of the firearm that killed McGowan. No physical evidence tied Moi to the gun that killed McGowan. The jury acquitted Moi on the unlawful possession charge and deadlocked on the murder charge. On retrial, the State convicted Moi with murder, while arguing that Moi possessed a gun. Presumably, the State could not convict Moi with murder without showing that Moi fired the bullet from the gun that forensic evidence established killed McGowan.

In a personal restraint petition, Matthew Moi contended that double jeopardy precluded him from being tried for murder with a gun he had been acquitted of possessing. The Supreme Court agreed. The jury had previously decided the ultimate fact of whether Moi possessed the gun that killed Keith McGowan. The State agreed that

Moi satisfied the first three elements of collateral estoppel under Washington law, but not the fourth element. The State argued that collateral estoppel would work an injustice because Moi had sought severance of the counts. The Supreme Court rejected the contention in part because the trial court had denied the motion to sever.

We contrast the Washington Supreme Court decision in *State v. Eggleston*, 164 Wn.2d 61 (2008). Sheriff deputies raided the home of Brian Eggleston. A fire fight ensued. Eggleston shot and killed Pierce County Sheriff Deputy John Bananola. The State charged Eggleston with aggravated first degree murder. One element of aggravated first degree murder is knowing the victim to be a law enforcement officer. The jury acquitted Eggleston on the first degree murder charge, but found Eggleston guilty of second degree murder. In a special verdict form, the jury found that Eggleston had not knowingly killed a police officer. Nevertheless, the trial court had instructed the jury not to complete the special verdict form unless it convicted Eggleston of first degree murder. The trial court considered the special verdict superfluous.

After reversal of the conviction on appeal, the State tried Brian Eggleston again on the second degree murder charge. During retrial, the State argued again that Eggleston knowingly shot a law enforcement officer. Although not an element of second degree murder, any knowledge impacted Eggleston's assertion of self-defense. After the jury found Eggleston guilty of second degree murder, the sentencing court imposed an exceptional sentence on finding that Eggleston knew the victim to be a police officer. On

appeal, Eggleston argued that the first jury's special verdict form precluded the State from relitigating his knowledge or lack thereof of John Bananola's status as an officer. The Supreme Court disagreed because the first jury did not need to decide Eggleston's knowledge.

We return to the prosecution of Blake Badgley. We agree that the elements of second degree rape and third degree rape do not correspond. Being physically unable to consent to sexual penetration does not necessarily or always equate to expressing, by words or conduct, a lack of consent. But collateral estoppel does not require that the two crimes share all of the same elements. If the jury necessarily resolved a fact when contemplating whether the accused committed one crime and that fact means acquittal of a second crime, double jeopardy bars the prosecution for the second crime.

Blake Badgley agreed that he sexually penetrated Jane. The only disputed factual question for resolution by the jury was whether Jane slept at the time of intercourse. The State contended that Jane could not consent because of her slumber and that she clearly expressed a lack of consent because of that same slumber. Stated differently, the State asserted no argument other than the act of sleeping satisfied the element of physical inability to consent, for purposes of second degree rape, and the clear expression of a lack of consent, for purposes of third degree rape. During oral argument before this court, the State conceded that it only argued, during trial, that Jane clearly expressed a lack of

consent through her sleeping.  During trial, the State never distinguished between any status of sleep needed to convict for third degree rape as opposed to second degree rape.

Just as in *Ashe v. Swenson*, Blake Badgley's first jury found that the State had failed to prove a fact fatal to convict on one crime and that finding precludes conviction on a second crime where the absence of proof is also fatal.  Badgley's jury necessarily found that Jane was not asleep, but rather was sufficiently conscious to be able to express a lack of consent for purposes of third degree rape.  No later jury can contradict this finding by ruling that Jane was sufficiently asleep to be unable to consent.  When reviewing the record as a whole, particularly the State's argument to convict Badgley of third degree rape, we conclude the jury necessarily found Jane to be sufficiently alert to express whether or not she desired intercourse.

The State argues that, in making the decision to acquit Blake Badgley, the jury possibly concluded that (1) the State failed to meet its burden of establishing that Jane either (i) did not consent to the sexual intercourse with Badgley or (ii) such lack of consent was clearly expressed by words or conduct, but the jury was unable to reach unanimity on whether (2) the sexual intercourse occurred when Jane was incapable of consent by reason of being physically helpless.  The State argues these two results can be consistent.  Nevertheless, under double jeopardy jurisprudence, we must review the evidence in light of the arguments asserted by the parties during trial.  The State never argued this hypothetical to the jury or to the trial court.  Instead, the State consistently

tried the case on the theory that Jane was asleep and her sleep both precluded her from consent and constituted a clear expression of lack of consent.

The dissenting author writes that the majority fails to cite a decision that stands for the proposition that the State is precluded from presenting an argument in a second trial that a jury already rejected. We assume the dissent distinguishes between, on the one hand, arguments presented by the State based on underlying facts and, on the other hand, the underlying facts. To answer the dissent's contention, we repeat earlier portions of this opinion. The reviewing court must view all the circumstances of the proceedings. *Sealfon v. United States*, 332 U.S. 575, 579 (1948). Collateral estoppel protects against "a series of prosecutions, involving the same fundamental issues, in which it presents additional arguments." *United States v. Castillo-Basa*, 483 F.3d 890, 893 (9th Cir. 2007). The court, when determining a question of collateral estoppel, should consider "the evidence and the arguments before" the jury. *United States v. Castillo-Basa*, 483 F.3d 890, 901 (9th Cir. 2007). The court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter." *Ashe v. Swenson*, 397 U.S. 436, 444 (1970) (quoting Mayers & Yarbrough, Bis Vexari: *New Trials and Successive Prosecutions*, 74 HARV. L. REV. 1, 38-39 (1960). The dissent cites no case law to the contrary.

We also deem it fair and consistent with rationality to preclude the State from asserting an argument forwarded to convict the accused of a second crime when the jury

22

already rejected the same argument by the State to convict the accused of another crime.

The State does not now forward any theory to convict Blake Badgley of second degree

rape other than that Jane was incapable of consenting to sex because she was asleep.

On appeal, Blake Badgley does not assert judicial estoppel so we do not rest our

decision on this doctrine. Nevertheless, judicial estoppel dovetails with our double

jeopardy analysis and bolsters dismissal of the second degree rape claim.

In an effort to defeat double jeopardy, the State performs an about-face as to its

positions as to sufficiency of evidence for the charge of third degree rape and the extent

of Jane's sleep. The State writes:

> First, the evidence is nearly nonexistent that [Jane] "clearly
> expressed by words or conduct" that she did not consent to sexual
> intercourse with Badgley. On the contrary, the evidence was that [Jane]
> was seeking sexual activity earlier that night, including with Badgley. . . .
> Second, there was no evidence that [Jane] ever clearly expressed her lack of
> consent to Badgley during the sex even though she was awake for the last
> part of it.

Br. of Respondent at 8. After the State's completion of its case at trial, Blake Badgley

sought to dismiss the third degree rape charge on the ground that the evidence did not

support a jury finding that Jane clearly expressed a lack of consent. The State responded

that her sleep clearly expressed a lack of consent. Based on this argument, the trial court

denied the motion to dismiss.

Contrary to its respondent's brief, the State, during trial, never conceded that Jane

was awake during any portion of the intercourse. The trial court found, as part of its

23

order denying the posttrial motion to dismiss, that the State argued that Jane was sleeping at the time of sexual intercourse. The trial court did not suggest that the State conceded that Jane was awake at any time during the intercourse.

The State's current concession amounts to an acknowledgement that it lacked evidence to charge Blake Badgley with third degree rape because no evidence established a clear expression of lack of consent. This concession demonstrates a violation of the ethical standards of prosecuting attorneys. Standard 3–4.3 of the American Bar Association Standards Minimum Requirements for Filing and Maintaining Criminal Charges (4th ed. 2017) on the prosecution function reads:

> (a) A prosecutor should seek or file criminal charges only if the prosecutor reasonably believes that the charges are supported by probable cause, that admissible evidence will be sufficient to support conviction beyond a reasonable doubt, and that the decision to charge is in the interests of justice.
> (b) After criminal charges are filed, a prosecutor should maintain them only if the prosecutor continues to reasonably believe that probable cause exists and that admissible evidence will be sufficient to support conviction beyond a reasonable doubt.

This court cited a previous version of the rule in *State v. Knapstad*, 41 Wn. App. 781, 785-86, 706 P.2d 238 (1985), *aff'd*, 107 Wn.2d 346, 729 P.2d 48 (1986).

The dissent laments that the majority identifies unethical conduct of the State. The dissent worries that the majority's mention of the conduct will preclude the State from any concessions in the future. But the dissent fails to recognize that we do not condemn

24

all concessions of the State. We should, however, recognize when the State concedes

that it lacked evidence to prosecute an accused for a crime charged.

The State further writes:

> How can the State prove (1) [Jane] clearly expressed (i.e., made known) her lack of consent and simultaneously prove (2) she was unconscious or for any other reason physically unable to communicate an unwillingness to act? If one of these is true, the other is not.

Br. of Respondent at 9. The State argued to the jury during summation:

> [Jane] didn't consent. Her lack of consent was clearly expressed by her inability to act. Both of these same things can be true. She can be both physically helpless and not be consenting at the same time. She was both incapable of consent and unable to consent.

RP at 774. The trial court found that the State argued that both Jane's sleep rendered her

incapable of consenting by reason of being physically helpless for the purpose of second

degree rape and that Jane's sleep was conduct that clearly expressed her lack of consent

for purposes of third degree rape.

Also, the State now posits that "sleeping doesn't convey a clear expression of lack

of consent." Br. of Respondent at 10. On that same page, the State adds: "The only way

for [Jane] to clearly express a lack of consent to sex would be wake her up first-thereby

giving her the conscious and volitional ability to clearly express it." Br. of Respondent at

10-11. Later the State adds: "[S]leeping/unconscious[ness] . . . alone does not indicate

any expression of consent, clear or otherwise, for purposes of proving third degree rape."

Br. of Respondent at 11. The State may mean to write "lack of consent," rather than

"expression of consent." Regardless, during trial, the State repeatedly argued to the contrary. We also repeat that, in its brief, the State now takes the position, contrary to its position at trial, that Jane was awake for part of the intercourse.

Finally, the State writes: "[T]he only thing [Jane] expressed that night was that she was interested in sexual activity." Br. of Respondent at 10. During trial, the State repeatedly denied that Jane ever expressed interest in sex with Blake Badgley.

After having lost on the question controlling both charges, the State seeks to send Blake Badgley through the gauntlet again by contradicting its arguments and positions during trial. Judicial estoppel precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position. *Arkinson v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007); *In re Committed Intimate Relationship of Amburgey & Volk*, 8 Wn. App. 2d 779, 788, 440 P.3d 1069 (2019). The doctrine applies when a party adopts a legal position that conflicts with an earlier position taken either in the same or related litigation. *Farmers High Line Canal & Reservoir Co. v. City of Golden*, 975 P.2d 189, 201-02 (Colo. 1999). A party may not assert a theory on appeal different from that presented on the trial level. *Mueller v. Garske*, 1 Wn. App. 406, 409, 461 P.2d 886 (1969).

During oral argument before this court, the State's attorney agreed that the State is now arguing a different theory on appeal from that argued at trial. The State's attorney

26

characterized its trial argument as "completely illogical." Washington Court of appeals

oral argument, *State v. Badgley*, No. 38801-8-III (Apr. 27, 2023), 15:45 to 15:55.

Courts apply judicial estoppel to protect the integrity of the courts and to minimize

inconsistency, duplicity, and waste of time. *In re Committed Intimate Relationship of*

*Amburgey & Volk*, 8 Wn. App. 779, 788 (2019). Courts apply the doctrine to prevent a

litigant from playing fast and loose with the court. *Miller v. Campbell*, 137 Wn. App.

762, 771, 155 P.3d 154 (2007), *remanded*, 164 Wn.2d 529, 192 P.3d 352 (2008); *Drain v.*

*Betz Laboratories, Inc.*, 69 Cal. App. 4th 950, 955, 81 Cal. Rptr. 2d 864 (1999).

Blake Badgley's trial court adopted the State's trial position that sleeping can be a

clear expression of lack of consent and also disable a person from consenting. One factor

a court considers in applying judicial estoppel is whether the party's prior inconsistent

position was accepted by the first court. *Taylor v. Bell*, 185 Wn. App. 270, 282, 340 P.3d

951 (2014).

The dissent contends that we fail to identify any advantage gained by the State as a

result of arguing at trial a theory the opposite of which the State now forwards. But the

State defeated a motion to dismiss based on its inconsistent position.

## CONCLUSION

We remand this prosecution to the superior court with directions to dismiss with

prejudice the charge of second degree rape against Blake Badgley.

No. 38801-8-III
*State v. Badgley*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, C.J.

I concur in result only:

_____
Lawrence-Berrey, J.

28

No. 38801-8-III

STAAB, J. (dissenting) — I disagree with the majority opinion and would find that collateral estoppel does not prevent the State from retrying the second degree rape charge. Despite Badgley's attempts to narrow the scope of the jury's fact-finding province, Badgley cannot meet his burden of showing that the verdict of acquittal necessarily decided the "identical" issue that will be required to prove second degree rape.

"Third degree rape is not a lesser included offense of second degree rape; rather, it is an inferior degree offense." *State v. Wright*, 152 Wn. App. 64, 71, 214 P.3d 968 (2009). Here, the jury was instructed that to convict Badgley of second degree rape, the State needed to prove that Jane[1] "was incapable of consent by reason of being physically helpless." Rep. of Proc. (RP) at 757, former RCW 9A.44.050(1)(b) (2007). "A person is physically helpless when a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act." RP at 759. A person who is sleeping is considered physically unable to communicate unwillingness to an act. *State v. Mohamed*, 175 Wn. App. 45, 58-59, 301 P.3d 504 (2013).

On the other hand, third degree rape is specifically limited to circumstances "not constituting rape in the . . . second degree." Former RCW 9A.44.060(1) (2013). To

_____

[1] We are using a pseudonym to refer to the victim who we will refer to as "Jane."

prove third degree rape, the State was required to show that Jane did not consent to

sexual intercourse, and clearly expressed her lack of consent through words or conduct.

RP at 758-59, former RCW 9A.44.060(1)(a).

At trial, the State argued that Jane's state of being asleep was conduct that clearly

expressed a lack of consent. The State's trial theory on third degree rape was legally

incorrect. Third degree rape contemplates a lack of consent by a person who is capable

of consenting. Compare former RCW 9A.44.060 with former RCW 9A.44.050(b); *State*

*v. Morales*, No. 79893-6-I, slip op. at 2 (Wash. Ct. App. July 27, 2020) (unpublished),

https://www.courts.wa.gov/opinions/pdf/798936.pdf, *State v. Pitts*, noted at 167 Wn.

App. 1031, slip op. at 2 (2012), *see State v. VanVlack*, 53 Wn. App. 86, 89, 765 P.2d 349

(1988) (The statutory definition of consent is similar to the ordinary definition of consent:

"'compliance or approval esp. of what is done or proposed by another . . . capable,

deliberate, and voluntary agreement to or concurrence in some act or purpose implying

physical and mental power and free action.' *Webster's Third New International*

*Dictionary* 482 (1981).").

Second degree rape, as charged here, required the State to prove that Jane was

incapable of consent. Each crime requires proof of different facts. The trial court

recognized this distinction when it concluded that second degree rape is about capacity

not consent.

2

Badgley's argument is premised on the mistaken assertion that sleeping is clearly conduct that expresses a lack of consent. He claims that sleeping was the only conduct that could have expressed lack of consent, and whether Jane was asleep or awake was the only issue for the jury to decide. Since the jury acquitted him of third degree rape, it must have concluded that Jane was awake. His argument fails because his premise is false.

The jury had to decide not only if Jane was sleeping, but whether sleeping was conduct that clearly expressed lack of consent. One interpretation of the jury's acquittal and failure to reach a verdict is that they could not agree on whether Jane was sleeping, but did agree that even if she was sleeping, this did not clearly express a lack of consent.[2] In other words, the jury could have rejected the State's theory and reached its verdict without finding that Jane was awake. Because this scenario is reasonably possible (and legally sound), Badgley cannot show that his acquittal on the third degree rape charge necessarily resolved whether Jane was awake or whether she was physically helpless. For this reason, collateral estoppel does not preclude the State from retrying the charge of second degree rape.

---

[2] Badgley's theory at trial was that Jane was awake. While Badgley did not argue that sleep could not constitute conduct that clearly expressed lack of consent, he did not concede or stipulate to this element either. Thus, the jury was required to determine if the State met its burden of proving this element.

3

Badgley points out that collateral estoppel is not to be applied in a hyper technical fashion, but with realism and rationality. I agree. However, in order to prevail on his claim of collateral estoppel, Badgley must still demonstrate that the jury necessarily decided the "identical" issue in the first trial that would be raised in the second trial. *State v. Eggleston*, 164 Wn.2d 61, 71-72, 187 P.3d 233 (2008). He does not need to show that the elements of the two crimes were the same, but he does need to show that the identical factual issue was necessarily decided. The jury's verdict did not necessarily decide that Jane was awake, much less that she had the capacity to consent. It is not hyper technical to point out that second and third degree rape are two different crimes with different elements that require proof of different facts.

The majority suggests that our determination of which facts were necessarily decided by the jury is constrained by the arguments of counsel. See majority opinion at 21-22. In other words, since the State's only argument on third degree rape was that sleep constituted conduct clearly expressing lack of consent, the jury was bound to accept this argument. The majority opinion does not cite any authority for this position. The jury was instructed that the lawyer's statements are not evidence. The jury was free to disagree with the State's argument and conclude that sleeping is not conduct that clearly expresses a lack of consent. Nor is our review limited to the arguments of counsel presented at trial. Instead, in deciding whether collateral estoppel applies, we are directed to examine all the circumstances of the case, including the "pleadings, evidence, charge,

4

and other relevant matter." *Ashe v. Swenson*, 397 U.S. 436, 444, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970).

On appeal, the State—represented by a different attorney—now acknowledges that the act of sleeping does not clearly express lack of consent. This is not an inconsistent position; it is a concession. The majority contends that the State's concession is unethical because prosecutors should not file or maintain charges without probable cause. The majority's position is unfortunate. The State made a legal argument that it now concedes was in error. Nevertheless, there was probable cause for the charge to go forward and the trial court denied Badgley's motion to dismiss. Conceding a legal error is not unethical. By finding such, we dissuade prosecutors from making valid concessions in the future.

The majority opinion also concludes that judicial estoppel should prevent the State from making a contrary argument. Initially it should be noted that the State is not taking a contrary argument; it is making a concession. Moreover, the parties do not raise judicial estoppel in their briefs and we should not consider it on appeal. RAP 2.5(a).

Even when judicial estoppel is raised, its application is restrained to the narrowest of circumstances, "so as to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." 28 AM. JUR. 2D *Estoppel and Waiver* § 69 (2021).

Judicial estoppel prevents a party from taking a position inconsistent with an earlier position to gain an unfair advantage. *In re Committed Intimate Relationship of*

*Amburgey and Volk*, 8 Wn. App. 2d 779, 440 P.3d 1069 (2019).  Here, the majority fails to identify the advantage gained by the State's concession.  The jury acquitted Badgley of the third degree rape charge, possibly because it did not agree with the State's erroneous position.  While the State's argument pertaining to the evidence of third degree rape was incorrect, the State has consistently maintained that sleeping constitutes physical helplessness for purposes of second degree rape; a legally correct position.  The trial judge denied Badgley's post-trial motion to dismiss the second degree rape charge not because the court was misled by the State's incorrect argument, but because the court correctly concluded that third degree rape deals with consent while second degree rape deals with capacity to consent.

Since I would conclude that a rational jury could have grounded its verdict on an issue other than that which Badgley seeks to foreclose, I would find that collateral estoppel does not prevent a retrial on the charge of second degree rape.

_____
Staab, J.

6